**BANK OF FREDERICKSBURG v. WENDEL et al. (No. 8066.)**

Court of Civil Appeals of Texas. San Antonio. Nov. 7, 1928.

Rehearing Denied Dec. 12, 1928.

H. H. Sagebiel, of Fredericksburg, for appellant.

J. B. Wieser, of Fredericksburg, for appellee.

SMITH, J. This suit was brought by Mrs. Anna Wendel, joined pro forma by her husband, to recover of the Bank of Fredericksburg the title to a 200-acre farm 26 miles from Fredericksburg, in Gillespie county, and occupied by the Wendel family as their homestead. It was contended by Mrs. Wendel that the land was her separate property, and that she had conveyed it to the bank under duress growing out of threats made by the bank officials that, unless she conveyed the land to the bank in part settlement of her husband's debt to it, her husband would be prosecuted and sent to the penitentiary upon a charge of having unlawfully disposed of mortgaged property. In her conveyance of the land to the bank the consideration therefore was recited to be $10,000 cash, but in fact it took the form of a credit for that amount on Wendel's account at the bank and a release of all chattel mortgages held by the bank against Wendel's live stock. The jury found that Mrs. Wendel executed the conveyance under duress, and the court thereupon rendered judgment canceling the conveyance. The bank has appealed.

The cause was submitted to the jury upon the one issue of duress, under appropriate instructions which are not criticized by the parties, and the only point made in the appeal is that the evidence did not support the jury's findings upon the sole issue submitted.

It appears that at the time of the alleged duress Willie Wendel, the husband, was ill in San Antonio. Mrs. Wendel testified that she had occasion to go from her home into Fredericksburg; that Keller, a real estate agent, met her on the street and requested her to go to his office, which she did; that Keller then called in Gold, the president,

and Koennecke, the vice president, of the bank; and that the alleged threats then occurred. She testified:

"What lead up to making this deed—well I met Koennecke and Gold in Keller's office and they asked me where my husband was, and at that time I didn't know where he was. He was sick in San Antonio, and was there taking treatment, and I was not acquainted with his address just at that time, because I didn't know where he was. They said he had sold some property and cattle mortgaged to the bank, which had to be settled at once, so they said if I would make a deed to my homestead for this property, why, they could settle that, and, of course, this made me,—I didn't know what to do after that. They crowded me, and I was nervous and couldn't sleep. And, they said that if I wouldn't do that they would prosecute my husband, and get him wherever they found him and bring him in a bad shape and send him to the pen. That conversation took place in March, I think. Yes, sir, this conversation took place before the time of the deed dated March 19, 1927. A day or two before. On that day I was so—I didn't see—I didn't know what I should do. I was so nervous, I went home that day. I didn't consent to make any deed that day. * * *

"After that conversation at Keller's office, and what occurred after that conversation, after I went home—Keller came out to my home and he said that Koennecke and Gold sent him out there to tell me that that was my last chance,—if I wouldn't give up my home now, why, they would go ahead and get my husband and also would bring the biggest law suit that ever was made, and Keller says: 'Now that's all you can do. You have to give up your home. That's all you can do.' And, then I asked Keller what I was getting out of my home and he says, 'Not a red cent. They wouldn't give you a red cent.' And so I couldn't sleep of a night and I didn't know what to do and it made such a fear and disgrace for the whole family. I just didn't know what to do. I told Keller then that I was going to San Antonio the next day, and I came to Fredericksburg and stopped here on the street and Keller came and says: 'Well, you have to sign up now, before you go to San Antonio. You have to sign all the papers.' And he went with me to Sagebiel's (the bank's attorney) office and there I signed it. Yes, sir, this particular deed. The deed that I am trying to set aside. This deed was already written when I came to Sagebiel's office. No, sir, I didn't have to wait until somebody wrote it up. There was a young man there, and Mr. Keller, at Sagebiel's office. Mr. Sagebiel wasn't there. As to the steps this young man took in explaining this deed to me, he didn't explain it to me. He says, 'Here is the papers for your homestead; now you can sign them.' Yes, sir, I

signed it. Yes, sir, that was the last of it. As to whether or not I received $10,000.00 in cash, as the deed states,—not a cent in cash. * * *

"As to what effect the remark of Gold and Koennecke to prosecute my husband, unless I would make this deed had on me, well, it made me so nervous and I had such a great fear, and restless and I couldn't sleep of a night for all this, and they made me so,—I didn't know what I was doing and I just got out of my head. * * *

"Yes, we discussed the matter. No, I didn't then agree to convey that land to the bank. Yes, Mr. Gold and Mr. Koennecke asked me to convey that land to the bank in settlement or part settlement of the debt. No, I wouldn't agree to it on that occasion. I told him my husband was sick and crippled and I would not give up my home, and then Gold and Koennecke both said 'Yes, you can,' and I told them I couldn't and wouldn't do it." * * *

She further testified that in this conversation the bank officials "talked to me in a loud manner, loud and harsh talk." She testified, finally:

"No, sir, there was no other reason, beyond what I have testified to, that caused me to make this deed to the bank. No, there was no other reason at all."

Appellant's president and vice president, and the land agent, Keller, testified at length and in refutation of Mrs. Wendel's testimony. The jury answered "yes" to this question:

"Was the signature and acknowledgment of the plaintiff, Mrs. Anna Wendel to the deed dated March 19, 1927, from H. W. Wendel and wife to The Bank of Fredericksburg, obtained under 'duress' as that term is hereinabove explained to you?"

We have concluded that the evidence warrants the jury's finding. The effect of appellee's testimony is that the claimed threats of the bank officials to prosecute and imprison her husband so operated upon her state of mind as to deprive her of the free exercise of her will in the matter. The fact that two or three days elapsed between the making of the threats and the execution of the deed by the victim does not affect the case, as claimed by appellant. The question is: Did these threats actually induce the act now sought to be nullified? The evidence upon the issue is sharply conflicting, the jury has resolved the issue under instructions not brought into question, and their finding is conclusive upon this court as it was upon the court below.

The judgment is affirmed.