## UNITED STATES FIDELITY & GUARANTY CO. v. CARR.

### No. 12291.

Court of Civil Appeals of Texas.
San Antonio.

July 11, 1951.

Rehearing Denied Sept. 5, 1951.

House, Mercer, Kaine & House, San Antonio, for appellant.

Archer & San Miguel, San Antonio, for appellee.

NORVELL, Justice.

The trial court, after hearing this cause without a jury, set aside a deed dated March 22, 1950, executed by appellee, Dessie Carr, purporting to convey to appellant, United States Fidelity and Guaranty Company, Lots Nos. 9, 10, 11, 12, 13, 14, 33 and 34 in Block Q, in the Railroad Addition to the City of Floresville, Wilson County, Texas.

No request for findings of fact and conclusions of law. was made, so we presume that all fact issues having support in the evidence were found in support of the judgment.

The ground upon which appellee sought to avoid the deed was fraud and duress. Appellant challenges the sufficiency of the evidence to support the implied finding that appellant's agent exercised duress

upon appellee. This matter is presented by appellant's seventh point which will be first considered.

Appellee is the widow of S. B. Carr, deceased, and independent executrix of his estate. During his lifetime S. B. Carr was the legally appointed guardian of Charles Applewhite, a person of unsound mind. The appellant was the surety upon the bond given by S. B. Carr. After the death of S. B. Carr, it was asserted that there was a shortage in the accounts applicable to the Applewhite guardianship, and although apparently neither the existence of a shortage nor the amount thereof was determined in a judicial proceeding, Mrs. Dessie Carr as executrix of the S. B. Carr estate, filed a report in the guardianship case, stating that there was a shortage of $1,470.09. This amount was paid to the successor guardian by the surety company.

The deed in dispute was executed by Mrs. Carr in connection with a settlement between the S. B. Carr estate and the surety company. The instrument was signed by Mrs. Carr in Austin, Texas, on March 22, 1950, and although it purported to convey eight lots, it was only effective as to Lots Nos. 33 and 34, as appellee had theretofore conveyed Lots Nos. 9 to 14, inclusive, to other persons who were not parties to this lawsuit. Lots Nos. 33 and 34 constituted the homestead of Mrs. Carr. Article 16, §§ 50, 51, 52, Constitution of Texas, Vernon's Ann.St.

Appellee had conversations with William H. Cowan and E. B. Fuller, agents of the Flahive Claim Service, to whom the appellant had turned over the claim against the S. B. Carr estate for collection or settlement.

The above facts are undisputed and many of them are covered by stipulation. The alleged duress is predicated upon conversations between Mrs. Carr and Fuller and the evidence relating thereto is highly conflicting.

According to Fuller, he, or the company for whom he worked, received a prepared form of deed through the mail at Austin,

Texas. The deed was sent by the Surety Company with the request that Mrs. Carr's signature thereto be secured. She was then temporarily residing in Austin at a boarding house owned by her sister. Cowan had previously talked to Mrs. Carr about the matter and all Fuller did (according to his testimony) was to present the deed to Mrs. Carr, who thereupon signed and acknowledged it in his presence.

Mrs. Carr's version of the transaction was entirely different. From her testimony, it appears that the Carr family was a prominent one in the City of Floresville and that the claim of shortage of accounts in the guardianship proceedings was a matter of much embarrassment and humiliation to the appellee.

Mrs. Carr identified Fuller upon the trial and testified that he came out to see her in Austin with the deed. She said, "I thought he was my friend. He posed as such, and had told me up to that time that the United States Fidelity Company wanted to protect my husband's name and that they were sure everything had been paid off. Now, that is the truth, so help me God. And I believed him. So he brought this paper out and I can't remember what he said, only he said, 'You sign this.' And I argued with him and told him that it looked like my home. He says, 'It is not your home.' And I said, 'It looks awfully like a "Q" (the block within which the homestead was located) to me.' He said, 'It is not a "Q", and he says, 'Wasn't there a will?' and I said, 'Yes, sir.' And, well, he says, 'You are responsible for the debts, for Judge Carr's debts,' and he says, 'These are those lots down below you and it is an "O", and I said, 'It looks awfully like a "Q" to me.' * * * He told me that I was responsible for my husband's debts and if I didn't pay it he would put me in jail, that they would file suit against me, and I knew I would go to jail if they did because I didn't have any money. * * * Well, he just told me that he was going to prosecute and that would mean jail for me. * * * He said, 'Well, you know what this means. You are liable to go to jail and we are going to file suit if you

don't pay it.' * * * Well, I think if he told me he was going to put me in jail it would be criminal charges."

Mrs. Carr testified that she would not have signed the deed to her homestead except for the fact that such statements and representations were made to her.

It is reasonably apparent from the statement of facts that much of Mrs. Carr's testimony was given under the stress of intense emotion and at one point the trial had to be delayed until she had composed herself.

■ The district judge in this case was the trier of the facts and had the opportunity to observe the demeanor of the witnesses upon the stand and was thus in a much better situation then we are to decide the disputed fact issues, and for that reason it has been repeatedly held that a reviewing court will not disturb a jury verdict or a trial judge's findings in a non-jury case, as long as there is some evidence to support them and they are not so against the overwhelming preponderance of the evidence as to be clearly wrong. 3B Tex.Jur. 449, Appeal and Error, § 939.

■ It is urged by appellant that the evidence shows no more than the threat to institute a criminal prosecution and civil proceedings for the recovery of a debt, and therefore the case is controlled by Landa v. Obert, 45 Tex. 539, and opinions following that decision. With this view we cannot agree. If S. B. Carr were short in his accounts, Mrs. Carr would not be criminally liable therefor, and a threat to institute criminal proceedings against her would be a threat to subject her to an unwarranted and unfounded criminal action. There is no showing that she had knowledge, one way or another, of whether or not her husband had been guilty of a violation of the penal code, and under her testimony there was an implicit threat of family disgrace and humiliation against which danger she felt herself to be helpless. Further, the evidence in this case goes beyond that of Landa v. Obert, 45 Tex. 539, in that here, in addition to evidence of the institution of criminal and civil proceedings, there was testimony to the effect that Mrs. Carr was told that if she refused to make a settlement she would be put in jail. In the case above cited it was pointed out that the threat of criminal prosecution alone does not constitute duress *unless it implies imprisonment.* Landa v. Obert, 45 Tex. 539, 548.

■ We hold the evidence sufficient to support the trial court's implied finding of duress. First Guaranty State Bank of Clyde v. Tipton, Tex.Civ.App., 227 S.W. 963; Bank of Fredericksburg v. Wendel, Tex.Civ.App., 11 S.W.2d 341; 7 Tex.Jur. 897, Cancellation of Instruments, § 10; 15 Tex.Jur. 762, Duress and Coercion, § 5. Appellant's seventh point is overruled.

■ In our opinion, there is no defect of parties in this suit. As above pointed out, it appears that prior to the execution of the deed here questioned, Mrs. Carr sold and conveyed Lots Nos. 9, 10, 11, 12, 13 and 14 to persons who are not parties to this litigation. The rights of such persons are not here involved, and the judgment of the trial court, one way or another, would not be binding upon them. The mere fact that appellant, should it ultimately be successful in the present litigation and secure a decree upholding the questioned deed, might possibly have an action to set aside certain conveyances of said lots, would not render the grantees in such deeds necessary parties to this litigation. They were not parties to the instrument sought to be cancelled. 7 Tex.Jur. 972, Cancellation of Instruments, § 54; 9 Am.Jur. 395, Cancellation of Instruments, § 54. Appellant's first and second points are overruled.

■ By its third, fourth and fifth points, appellant asserts that it was incumbent upon Mrs. Carr to show that the property she conveyed was of a greater value than the alleged debt owed by the S. B. Carr estate. The trial court excluded evidence of the value of the property covered by the deed upon the apparent theory that at the time the same was offered its relevancy was not apparent. Appellant relies primarily upon Texas Osage Co-operative Royalty Pool v. Brown, Tex.Civ.App., 118 S.W.2d 944, which involved an exchange of properties and is not in point here. It is undisputed

that the property conveyed was the homestead of Mrs. Carr and exempt from execution. The issue here is whether the action of Mrs. Carr in executing the deed was her act or the result of the overpowering of her will by the exercise of unlawful duress. Bartek v. Kolacek, Tex.Civ.App., 99 S.W. 114. Appellant's third and fourth points are overruled.

Appellant's remaining points have been answered or rendered immaterial by the holdings above set forth, except for those which assert that judgment should be rendered for the appellant by reason of a so-called "judicial admission" arising from the following circumstance:

The deed involved was exhibited to Mrs. Carr and she was questioned about her signature thereon. We quote from the Q. and A.:

"Q. Mrs. Carr, I will ask you to state whether or not this is your signature? A. Yes, sir, it looks like it.

"Q. That is your signature? A. Yes, sir."

The deed was then offered and received in evidence. Shortly thereafter, when Mrs. Carr's attorney referred to the deed, Mrs. Carr declared, "That is not the paper I signed." She thereafter repeated this statement, and said, "I don't know how it (evidently referring to her signature) got there. I never signed that paper. It was a sheet, a long sheet with all writing on it." She also said that her acknowledgment to the deed was never taken. At this juncture appellant's attorney objected on the grounds that the instrument had been introduced in evidence by the plaintiff, saying that "They are bound by it, and it is an instrument that shows to have been properly acknowledged."

It appears beyond dispute that a conveyance was executed by Mrs. Carr in which the appellant was named as grantee. Appellant's witness E. B. Fuller testified that the deed introduced in evidence by appellee was signed by Mrs. Carr in his presence and that he took her acknowledgment thereto and the sole basis of appellant's claim to the property in question is based upon a conveyance from Mrs. Carr.

Appellant seemingly regards the doctrine of oral "judicial admissions," so-called, as establishing a certain norm or pattern into which a plaintiff's evidence must fit if a recovery is to be allowed. It is asserted that because Mrs. Carr in one portion of her testimony denied that she executed the deed, she cannot have the same cancelled, although, if non-execution of the deed be conceded *as to both parties,* it is readily apparent that appellant has no title.

Perhaps some confusion has arisen by referring to a party's "swearing himself out of court" as a judicial admission or as being in the nature of a judicial admission. The rule often has the effect of a judicial admission but it is predicated upon a broader base than mere admission, in that it may be an effective bar to a party's recovery even though the testimonial declaration is not in the form of an admission. It follows that the rule or doctrine should be applied with caution. The rule as to true judicial admissions and testimonial declarations which bar a recovery is illustrated by the case of Alamo v. Del Rosario, 69 App.D.C. 47, 98 F.2d 328, 330, wherein it was said that: "A stipulation, or judicial admission, 'conceding for the purposes of the trial the truth of some alleged fact, has the effect of a confessory pleading, in that the fact is thereafter to be taken for granted.' Wigmore, Evidence, § 2588. But, 'It is of the nature of an admission, plainly, that it be by intention an act of waiver, relating to the opponent's proof of the fact, and not merely a statement of assertion or concession, made for some independent purpose; in particular, a statement made for the purpose of *giving testimony* is not a judicial admission.' Id., § 2594; cf. Supp.1934, § 2594a. Mere testimony, though it come from a party, is not 'by intention an act of waiver.' A witness is not selling something or giving something away, but simply reporting something. 'The testimony of parties to a suit must be regarded as evidence, not as facts admitted.' Matthews v. Story, 54 Ind. 417, 419."

See also, Wigmore on Evidence, 3rd Ed., § 2588, Theory of Judicial Admissions, and

§ 2594a, Party's Testimony as a Conclusive Admission.

In Texas, the term "judicial admission" has been defined as a "waiver of proof" during the course of a judicial proceeding. Mahoney v. Mahoney, Tex. Civ.App., 103 S.W.2d 459, 462, wr. ref. The rule by which a party's recovery in a lawsuit is barred by his own testimonial declarations is one of public policy. This public policy basis was pointed out in Westbrook v. Landa, Tex.Civ.App., 160 S. W.2d 232, 233, wherein the following excerpt from 80 A.L.R. 626 was quoted: "A search for a general principle deducible from the foregoing cases (relating to the conclusiveness of testimony of a party favorable to the adverse party) does not yield satisfactory results. The attempt of some courts to draw an analogy between the statements of parties on the witness stand and judicial admissions contained in pleading and agreements of counsel is not entirely convincing. But in all these cases the courts sense the fact that it would be 'as absurd, as *it manifestly would be unjust,*' to allow *a party to recover after he has clearly and unequivocally sworn himself out of court.*" (Italics ours.)

There are a number of Texas cases which discuss the matter of a party's being precluded from recovery by his own testimonial declarations, not necessarily in the form of admissions, and from them it may be said that for the rule to be applicable it must at least appear,

1. That the declaration relied upon was made during the course of a judicial proceeding. Happ v. Happ, Tex.Civ.App., 160 S.W.2d 227; Garza v. Garza, Tex.Civ. App., 191 S.W.2d 767.

2. That the statement is contrary to an essential fact embraced in the theory of recovery or defense asserted by the person giving the testimony. Stanolind Oil and Gas Company v. State, 136 Tex. 5, 133 S. W.2d 767, 145 S.W.2d 569; Southern Surety Co. v. Inabnit, Tex.Civ.App., 1 S.W. 2d 412; Clack v. Williams, Tex.Civ.App., 189 S.W.2d 503.

3. That the statement is deliberate, clear, and unequivocal. The hypothesis of mere mistake or slip of the tongue must be eliminated. 20 Am.Jur. 1032, Evidence, § 1181. If the statement merely contradicts some other portion of the party's testimony, conclusive effect cannot be given thereto, but a fact issue is presented for the determination of the jury or the judge sitting without a jury as in the case of an ordinary witness. Leonard v. Smith, Tex. Civ.App., 186 S.W.2d 284; New St. Anthony Hotel Co. v. Pryor, Tex.Civ.App., 132 S.W.2d 620.

4. That the giving of conclusive effect to the declaration will be consistent with the public policy upon which the rule is based.

5. That the statement is not also destructive of the opposing party's theory of recovery. In other words, the declaration must be one relating to a fact upon which a judgment in favor of the opposing party may be based.

When these rules are applied to the case at bar, it will be seen that Mrs. Carr is not barred from recovery because of her assertion (hardly in the form of an admission) that she had not executed the deed in question. The statement was self-contradicting and the hypothesis of mistake was not eliminated. In reviewing all the evidence in the case, the conclusion that Mrs. Carr did execute the deed in question is almost compelled, and certainly the district judge as the trier of facts could properly conclude that a mere mistake was involved, perhaps engendered by the somewhat trying experience of testifying in open court in a case of this nature. The law does not require absolute precision in recitation of facts, nor freedom from error on the part of litigants seeking redress at its hands.

Appellant is also met by the last rule mentioned, which probably has limited application, but fits the peculiar facts of this case. This cause was fully developed and appellant is now in effect urging that we accept as established in this case the fact that Mrs. Carr did not execute the deed upon which its title depends. Unless we abandon reality and consider a lawsuit as a species of a game, we cannot recognize

something as an established fact for one side and deny its existence for the other side.

None of appellant's points discloses a reversible error and the judgment is accordingly affirmed.