COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-03-251-CV
 
 
QUICKSILVER 
RESOURCES, INC.                                             APPELLANT
 
V.
 
CMS 
MARKETING SERVICES                                                     APPELLEE
AND 
TRADING COMPANY
 
 
------------
 
FROM 
THE 236TH DISTRICT COURT OF TARRANT COUNTY
 
------------
 
MEMORANDUM OPINION[1]
 
------------
I. Introduction
        Appellant 
Quicksilver Resources, Inc. challenges a summary judgment and declaratory 
judgment rendered in favor of Appellee CMS Marketing Services and Trading 
Company.  The primary issues we address in this appeal are whether, under 
Michigan law, the inclusion of an express merger provision in a contract 
precludes the introduction of parol evidence concerning a prior verbal agreement 
and whether the legal construction of a contractual provision as a mere 
agreement to agree collaterally estops a party from challenging a different 
contractual provision set forth in a different contract between different 
parties.  Because we hold that Michigan law precludes the introduction of 
parol evidence to vary the terms of a written contract containing an express 
merger agreement, and because collateral estoppel is inapplicable when the issue 
presented is not the same as the issue previously litigated, we will reverse the 
trial court’s summary judgment on Quicksilver’s causes of action for breach 
of contract, breach of the UCC duties of good faith and fair dealing, fraud in 
the inducement, and recission.  We will remand these claims to the trial 
court.  Because the summary judgment evidence conclusively establishes the 
existence of an express, written contract between Quicksilver and CMS, we will 
affirm the trial court’s summary judgment for CMS on Quicksilver’s unjust 
enrichment claim.
II. Factual and 
Procedural Background
        Quicksilver 
is a Fort Worth-based oil and natural gas exploration and production company.  
After a Michigan company that purchased large quantities of natural gas from 
Quicksilver declared bankruptcy, Quicksilver began negotiations with CMS.  
Following approximately a month of negotiations, on March 26, 1999, Quicksilver 
and CMS verbally agreed in a phone conversation that Quicksilver would sell and 
CMS would buy 10,000 mmbtu’s of natural gas per day for ten years at a minimum 
price of $2.47 per mmbtu, with the condition that the parties would share any 
“upside” equally.  This agreement was memorialized in a March 29, 1999 
transaction confirmation letter from CMS to Quicksilver, which Quicksilver 
signed.  The parties subsequently reduced their agreement to writing, 
executing an industry-standard GISB Base Contract for Short-Term Sale and 
Purchase of Natural Gas that contained the following provision:
 
Quicksilver and CMS MST agree that if the subject gas supply can be 
scheduled/delivered (whether on the spot short-term or long-term basis) to 
derive additional value, that the parties shall share in such additional revenue 
on a 50%-50% basis.
 
The 
contract also contained a merger clause, providing that the contract superceded 
“any prior contracts, understandings and representations, whether oral or 
written.”[2]  The parties agreed that the 
contract would be governed by Michigan law.
        As 
the gas market surged, Quicksilver attempted to discuss pricing and the upside 
sharing clause with CMS.  Despite the increase in gas prices, CMS failed to 
share profits with Quicksilver under the upside sharing clause and refused to 
provide information to Quicksilver concerning any additional revenue obtained by 
CMS from the gas sold to it by Quicksilver.  Eventually, Quicksilver sued 
CMS for breach of contract, unjust enrichment, fraud in the inducement, breach 
of the UCC duties of good faith and fair dealing, and a declaratory judgment.  
After suit was filed, CMS disclosed that prior to entering the agreement with 
Quicksilver it had negotiated a “back-to-back” financial hedge with respect 
to the gas covered by the Quicksilver contract, capping CMS’s effective 
financial recovery on the gas it purchased from Quicksilver at $2.54 per mmbtu, 
that is, at a profit of $0.07 per mmbtu.
        CMS 
answered Quicksilver’s suit, filed a counterclaim for a declaratory judgment, 
and eventually filed an amended motion for summary judgment on all of 
Quicksilver’s claims and on its own counterclaim for declaratory judgment.  
The trial court granted CMS’s motion for summary judgment and rendered a final 
judgment declaring that “CMS has not breached the gas purchase and sale 
agreement that is the subject of this lawsuit” and that “CMS is not required 
to pay any money to Quicksilver for the remaining term of such agreement beyond 
the fixed price of $2.47 per MMBTU of natural gas.” Quicksilver perfected this 
appeal.
III. Standard 
of Review
        In 
a summary judgment case, the issue on appeal is whether the movant met its 
summary judgment burden by establishing that no genuine issue of material fact 
exists and that the movant is entitled to judgment as a matter of law.  Tex. R. Civ. P. 166a(c); S.W. Elec. 
Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002); City of Houston v. 
Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979).  The burden 
of proof is on the movant, and all doubts about the existence of a genuine issue 
of material fact are resolved against the movant.  S.W. Elec. Power Co., 
73 S.W.3d at 215; Sci. Spectrum, Inc. v. Martinez, 941 S.W.2d 910, 911 
(Tex. 1997); Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co., 
391 S.W.2d 41, 47 (Tex. 1965).  Therefore, we must view the evidence and 
its reasonable inferences in the light most favorable to the nonmovant.  Great 
Am., 391 S.W.2d at 47.
        In 
deciding whether there is a material fact issue precluding summary judgment, all 
conflicts in the evidence are disregarded and the evidence favorable to the 
nonmovant is accepted as true. Harwell v. State Farm Mut. Auto. Ins. Co., 
896 S.W.2d 170, 173 (Tex. 1995).  Evidence that favors the movant's 
position will not be considered unless it is uncontroverted.  Great Am., 
391 S.W.2d at 47.
        A 
defendant is entitled to summary judgment if the summary judgment evidence 
establishes, as a matter of law, that at least one element of a plaintiff’s 
cause of action cannot be established.  Elliott-Williams Co. v. Diaz, 
9 S.W.3d 801, 803 (Tex. 1999).  The defendant as movant must present 
summary judgment evidence that negates an element of the plaintiff’s claim.  
Centeq Realty, Inc. v. Siegler, 899 S.W.2d 195, 197 (Tex. 1995).  
The summary judgment will be affirmed only if the record establishes that the 
movant has conclusively proved all essential elements of the movant's cause of 
action or defense as a matter of law.  Clear Creek Basin, 589 S.W.2d 
at 678.
IV. CMS’s 
Grounds For Summary Judgment
        CMS’s 
amended motion for summary judgment sought summary judgment on Quicksilver’s 
claims for breach of contract, breach of the UCC duites of good faith and fair 
dealing, and declaratory judgment on the grounds that (1) these claims by 
Quicksilver were barred by collateral estoppel, and (2) a transcript of a 
recorded March 26, 1999 phone conversation between the parties proved that CMS 
never agreed to the upside sharing clause and that the upside sharing clause was 
only an agreement to agree.  CMS sought summary judgment on Quicksilver’s 
claim for fraud in the inducement on the ground that CMS conclusively 
established Quicksilver’s lack of reasonable reliance.  CMS claimed that 
Quicksilver’s cause of action for unjust enrichment failed because a valid, 
express contract existed between the parties and that Quicksilver’s recission 
claim failed because a party cannot rescind a contract based solely upon its own 
mistake.  Quicksilver contends in its first and fifth through eighth issues 
that the trial court erred by granting summary judgment on any of these grounds.
        A. 
Collateral Estoppel
        In 
another, different lawsuit, Quicksilver sued Reliant Energy Services, Inc., 
seeking to enforce the following provision in a contract between Quicksilver and 
Reliant:
 
From time to time, RES or Quicksilver may encounter opportunities for optimizing 
the value of this Gas supply.  In those events, either party may propose a 
50-50 profit sharing arrangement with the other party.  Pursuant to such 
transactions, the parties may obtain incremental transportation to capture these 
opportunities, in which event the profits to be shared would take into account 
all costs and expenses associated with each transaction.
 
Quicksilver 
Res., Inc. v. Reliant Energy Servs., Inc., No. 2-02-249-CV, 2003 WL 
22211521, *1 (Tex. App.—Fort Worth 2003, no pet.).  This court held that 
the trial court correctly granted summary judgment for Reliant on 
Quicksilver’s claims under this contractual provision because the provision 
was discretionary, not mandatory.  Id. at *3.  This court 
specifically focused on the “may encounter,” “may propose,” “may 
obtain,” and “in which event” language in reaching this conclusion.  Id.
        CMS 
argues that our holding in Quicksilver’s suit against Reliant controls this 
suit by Quicksilver against CMS.  Specifically, CMS argues that (1) 
Quicksilver has judicially admitted “that the ‘upside sharing’ 
arrangements memorialized in the CMS contract and the Reliant contract were 
intended to be identical” and that (2) our decision in Quicksilver’s suit 
against Reliant collaterally estops Quicksilver’s suit in this case.  
Quicksilver, on the other hand, argues that it did not judicially admit anything 
and that the doctrine of collateral estoppel is not applicable to a trial court 
judgment concerning a completely different contract involving different parties 
and different contractual language.  Quicksilver also argues in its second 
and third issues that the trial court erred by considering the 
Quicksilver-Reliant contract as summary judgment evidence in this case and that, 
at the most, the parol evidence merely raises a fact issue regarding the 
parties’ intent in entering the Quicksilver-CMS contract.
        CMS 
argues that Quicksilver’s CEO judicially admitted in his deposition “that 
the ‘upside sharing’ arrangements memorialized in the CMS contract and the 
Reliant contract were intended to be identical.”[3]  
We agree that Quicksilver’s CEO testified that the upside sharing agreements 
in the Reliant contract and the present contract were intended to be 
identical, that is, to effectuate the same result. But this testimony does not 
constitute a judicial admission that the contractual provisions are the 
same.  In fact, Quicksilver’s CEO expressly acknowledged that the two 
provisions were not the same; they used different words and language.  The 
testimony cited by CMS does not constitute a judicial admission that the upside 
sharing agreement in the CMS contract is identical to the upside sharing 
agreement in the Reliant contract.  Accord Tex. Far West, Ltd. v. Tex. 
Invs. Mgmt., Inc., 127 S.W.3d 295, 308 (Tex. App.—Austin 2004, no pet.) 
(holding affiant’s statements did not qualify as judicial admissions or 
constitute conclusive evidence supporting summary judgment); United States 
Fid. & Guar. Co. v. Carr, 242 S.W.2d 224, 228 (Tex. Civ. App.—San 
Antonio 1951, writ ref'd) (explaining that as a general rule “[m]ere 
testimony, though it come from a party, is not by intention an act of waiver . . 
. . The testimony of parties to a suit must be regarded as evidence, not as 
facts admitted”).
        Collateral 
estoppel applies to bar relitigation of identical issues of fact or of law. See, 
e.g., In re Calderon, 96 S.W.3d 711, 720 (Tex. App.—Tyler 2003, orig. 
proceeding) (op. on reh’g).  In order to invoke collateral estoppel, a 
party must establish that 1) the facts sought to be litigated in the first 
action were fully and fairly litigated in the prior action, 2) those facts were 
essential to the judgment in the first action, and 3) the parties were cast as 
adversaries in the first action.  Eagle Props., Ltd. v. Scharbauer, 
807 S.W.2d 714, 721 (Tex. 1990).  The issue litigated in Quicksilver’s 
suit against Reliant involved the specific clause in the contract between 
Quicksilver and Reliant. Here, the issue involves a different contract with 
different provisions, including a different upside sharing clause, between 
Quicksilver and CMS.  Because the contracts were different and had 
different upside sharing provisions, the facts sought to be litigated here 
involving the Quicksilver-CMS contract were not, and could not have been, fully 
and fairly litigated in Quicksilver’s suit against Reliant.  We hold that 
collateral estoppel does not bar Quicksilver’s claims for breach of contract, 
breach of the UCC duties of good faith and fair dealing, or declaratory 
judgment.  We therefore likewise hold that the trial court erred by 
overruling Quicksilver’s objections to the Quicksilver-Reliant contract and 
related documents and by considering them as summary judgment evidence in this 
litigation.
B. Parol Evidence—The Transcript of the March 26, 
1999 Phone Conversation
 
        Next, 
Quicksilver contends that the trial court erred by considering a transcription 
of the recorded March 26, 1999 phone conversation between CMS and Quicksilver as 
summary judgment evidence. Quicksilver argues that the parties’ March 26, 1999 
verbal agreement was supplanted by, and merged into, the parties’ written 
contract pursuant to the contract’s merger provision.
        CMS, 
however, asserted in its amended motion for summary judgment that,
 
[t]his lawsuit involves the interpretation of a verbal contract in which CMS 
agreed to purchase natural gas from [Quicksilver] for a term of ten years at a 
fixed price of $2.47 per MMBTU.  Quicksilver alleges that a “special 
provision” contained in the written confirmation of that verbal contract 
requires CMS to pay Quicksilver half of any profits that it made, or potentially 
could have made, upon the resale of Quicksilver’s gas.
 
In 
this court, CMS likewise claims that “the rule of the marketplace confirms 
that this agreement was struck over the telephone and the terms of the deal are 
stated in the transcript.”
        Thus, 
CMS argued that the parties’ contract was only a verbal contract and 
that despite the existence of a subsequent written contract containing a merger 
clause, the March 26, 1999 telephone conversation agreement was somehow 
independent of and not merged into the written contract.[4]  
But Quicksilver did not sue CMS for breach of the alleged “verbal” agreement 
between the parties or for breach of the “written confirmation” of the 
telephone conversation.  Quicksilver sued CMS for breach of the upside 
sharing agreement set forth in the parties’ subsequent, signed, written 
contract, which contained a merger clause.
        Michigan 
law clearly prohibits the introduction of parol evidence whether oral or 
written, which contradicts, varies or modifies an unambiguous writing intended 
as a final and complete expression of the agreement.  See, e.g., Romska 
v. Opper, 594 N.W.2d 853, 857 n.3 (Mich. Ct. App. 1999).  Thus, where 
two parties have entered into a written contract and have expressed their 
intention that the writing constitute the complete and accurate integration of 
that contract, such as when the parties use an explicit merger provision, parol 
evidence of previous or contemporaneous understandings and negotiations is not 
admissible for the purpose of varying or contradicting the writing.  Michigan 
Nat’l Bank v. Laskowski, 580 N.W.2d 8, 10 (Mich. Ct. App. 1998); UAW-GM 
Human Res. Ctr. v. KSL Recreation Corp., 579 N.W.2d 411, 418 (Mich. Ct. App. 
1998).  There are only two very narrow exceptions to this rule: fraud and 
the rare situation where a written document is obviously incomplete on its face. 
Michigan Nat’l Bank, 580 N.W.2d at 10; UAW-GM, 579 N.W.2d at 
418.  When parties include an integration or merger clause in their written 
contract, it is conclusive and parol evidence is not admissible except in cases 
of fraud that invalidate the integration agreement or where the contract is 
obviously not complete for “filling of gaps.”  UAW-GM, 579 
N.W.2d at 418.  When a contract contains a merger clause, parol evidence is 
not admissible to show lack of integration of a prior verbal agreement.  Id.
        Here, 
Quicksilver and CMS entered into a written contract and expressed their 
intention via the merger clause that the contract constitute the complete 
agreement between them, integrating any prior verbal agreement.  
Consequently, Michigan law prohibits the introduction of oral or written parol 
evidence which contradicts, varies or modifies the written contract between 
Quicksilver and CMS.  Michigan Nat’l Bank, 580 N.W.2d at 10; UAW-GM, 
579 N.W.2d at 418.  Because the Quicksilver-CMS contract includes an 
integration or merger clause, it is conclusive and parol evidence is not 
admissible.  UAW-GM, 579 N.W.2d at 418; see also Fleet Bus. 
Credit, LLC, v. Kraphol Ford Lincoln Mercury Co., No. 249825, 2004 WL 
2179235, *2 (Mich. Ct. App. Sept. 28, 2004) (unpublished opinion) (holding trial 
court erred by admitting parol evidence when contract contained merger 
provision).  Accordingly, we hold that under Michigan law parol evidence is 
not admissible to contradict, vary, or modify the terms of the parties’ 
written contract.
        CMS 
based its motion for summary judgment on Quicksilver’s breach of contract 
claim solely on the verbal agreement between the parties, not the subsequent 
written contract.  Accordingly, CMS never argued in the trial court that 
the contract’s upside sharing agreement provision was ambiguous so that parol 
evidence could be introduced.[5]  Nonetheless, in 
its appellate brief and in a lengthy supplemental brief, CMS now argues that, 
under Michigan Uniform Commercial Code law, the trial court is required to 
consider the phone conversation as a circumstance surrounding the formation of 
the written contract that must be considered in interpreting the written 
contract regardless of whether the contract is ambiguous.[6]  
We have reviewed the transcript of the March 26, 1999 phone conversation and, 
even assuming that CMS had moved for summary judgment on the written contract, 
the transcript at most creates a fact issue as to the parties’ intent in 
entering the subsequent written contract.  It does not, as CMS argues, 
conclusively establish that CMS did not agree to the upside sharing agreement 
provision expressly set forth in the written contract CMS subsequently signed.  
Consequently, even if the March 26, 1999 conversation may somehow be considered 
as proper summary judgment evidence, it merely raises a fact issue regarding the 
parties’ intent and does not entitle CMS to judgment as a matter of law.  
Accordingly, we need not address whether Michigan Uniform Commercial Code law 
permits consideration of the March 26, 1999 phone conversation because this 
issue is not necessary to our disposition of this appeal.  See Tex. R. App. P. 47.1.
        CMS 
also argues on appeal that the written contract’s upside sharing agreement 
provision is “illusory,” “indefinite,” and “unenforceable.”  As 
we have explained, however, CMS moved for summary judgment solely based on the 
alleged verbal contract between the parties; CMS did not assert this ground for 
summary judgment in the trial court.  Accordingly, we cannot affirm the 
trial court’s summary judgment for CMS on this basis.  Johnson v. 
Brewer & Pritchard, P.C., 73 S.W.3d 193, 204 (Tex. 2002) (holding that 
summary judgment cannot be granted except on grounds expressly presented in 
motion).
        Because 
the remaining summary judgment evidence viewed in the light most favorable to 
Quicksilver does not conclusively negate any element of Quicksilver’s breach 
of contract claim or breach of the UCC duties of good faith and fair dealing, we 
hold that the trial court erred by granting summary judgment for CMS on these 
claims and by granting CMS a declaratory judgment.[7]  
We sustain Quicksilver’s first, second, third, and sixth issues.[8]
        C. 
Fraud in the Inducement
        As 
a general rule, an action for fraud in the inducement requires proof of the 
following elements: (1) the defendant made a material representation; (2) the 
representation was false; (3) when the defendant made the representation, the 
defendant knew that it was false, or made it recklessly, without knowledge of 
its truth and as a positive assertion; (4) the defendant made the representation 
with the intention that the plaintiff would act upon it; (5) the plaintiff acted 
in reliance upon it; and (6) the plaintiff suffered damages as a result.  Hi-Way 
Motor Co. v. Int’l Harvester Co., 247 N.W.2d 813, 816 (Mich. 1976). CMS 
claims that the March 26, 1999 phone conversation conclusively negates the 
detrimental reliance element of Quicksilver’s fraud in the inducement claim.  
We cannot agree.  Quicksilver produced summary judgment evidence that, when 
taken as true and viewed in the light most favorable to Quicksilver, raises a 
genuine issue of material fact on detrimental reliance: specifically, the 
testimony of both Quicksilver’s President and Chairman of the Board that they 
would not have signed the contract had the upside sharing clause not conformed 
to their understanding that the parties would share equally any additional 
revenue derived from resale of the subject gas at prices above the $2.47 base 
price.  Accordingly, we sustain Quicksilver’s seventh issue.
        D. 
Unjust Enrichment
        CMS’s 
motion for summary judgment addressed Quicksilver’s unjust enrichment claim in 
two sentences, as follows, “In this case, it is undisputed that there is a 
valid, express contract in place for the sale of gas by Quicksilver to CMS. 
Quicksilver’s claim for unjust enrichment accordingly fails as a matter of 
law.”  Generally speaking, when a valid, express contract covers the 
subject matter of the parties' dispute, there can be no recovery under a 
quasi-contract theory.  Fortune Prod. Co. v. Conoco, Inc., 52 S.W.3d 
671, 684 (Tex. 2000); Atl. Lloyds Ins. Co. v. Butler, 137 S.W.3d 199, 227 
(Tex. App.—Houston [1st Dist.] 2004, pet.denied) (op. on reh’g).  When 
a valid agreement already addresses the matter, recovery under an equitable 
theory is generally inconsistent with the express agreement. Atl. Lloyds Ins. 
Co., 137 S.W.3d at 227. Because the summary judgment evidence conclusively 
established the existence of a valid, express written contract between 
Quicksilver and CMS, Quicksilver’s claim for unjust enrichment is precluded.  
Accordingly, we hold that the trial court did not err by granting summary 
judgment for CMS on Quicksilver’s unjust enrichment claim.  We overrule 
Quicksilver’s fifth issue.
        E. 
Recission
        In 
its summary judgment motion, CMS claimed that it was entitled to judgment as a 
matter of law on Quicksilver’s recission claim because “a unilateral mistake 
does not provide grounds for [recission] even if this results in inequity to one 
of the parties.”  Generally, rescission of a contract will not lie except 
for mutual mistake or unilateral mistake induced by fraud.  Windham v. 
Morris, 121 N.W.2d 479, 481-82 (Mich. 1963).  Here, viewing the summary 
judgment evidence in the light most favorable to Quicksilver, a genuine issue of 
material fact exists concerning whether Quicksilver’s unilateral mistake 
concerning its possible profit under the upside sharing provision is based on 
CMS’s alleged fraud in failing to disclose that it intended to take financial 
hedges into account under that provision.  Thus, the trial court erred by 
granting summary judgment for CMS on Quicksilver’s recission claim.  We 
sustain Quicksilver’s eighth issue.
V. Conclusion
        Having 
disposed of each of Quicksilver’s issues, we reverse the trial court’s 
summary judgment on Quicksilver’s claims for breach of contract, breach of the 
UCC duties of good faith and fair dealing, fraud in the inducement, recission, 
and declaratory judgment.  We remand these claims to the trial court.  
We likewise reverse the trial court’s declaratory judgment for CMS.  We 
remand that claim to the trial court.  We affirm the trial court’s 
summary judgment for CMS on Quicksilver’s unjust enrichment claim.
 
 
 
                                                                  SUE 
WALKER
                                                                  JUSTICE
 
 
PANEL 
B:   DAUPHINOT, GARDNER, and WALKER, JJ.
 
DELIVERED: 
January 27, 2005

 
NOTES
1.  
See Tex. R. App. P. 47.4.
2.  
Specifically, the merger clause provided the following:
 
13.4 This Contract sets forth all understandings between the parties respecting 
each transaction subject hereto, and any prior contracts, understandings and 
representations, whether oral or written, relating to such transactions are 
merged into and superseded by this Contract and any effective Transaction 
Confirmation(s).  This Contract may be amended only by a writing executed 
by both parties.
3.  
CMS points to the following testimony:
 
Q. Is it—as I understand it, it’s Quicksilver’s position that the Reliant 
deal and the CMS deal were identical with respect to the upside sharing 
obligations?
 
A. 
Yes, sir.
 
Q. 
You are aware, are you not, that the language in the written confirmations 
differ substantially between those two deals?
 
A. 
Yes, sir, they differ.
 
Q. 
They differ? There are different words used?
 
A. 
That’s correct.
 
Q. 
But it’s Quicksilver[‘s] position that the effect —that the deal was the 
same in both cases?

A. 
The intent was the same in both cases.

Q. 
The same deal?

A. 
Yes, sir.
4.  
CMS argued, “But Quicksilver overlooks the critical fact that the parties’ 
contract was a verbal agreement that was 
made over the telephone.”
5.  
Indeed, CMS would not argue ambiguity because if the upside sharing provision is 
ambiguous or unclear the trier of fact is to determine the intent of the parties 
and summary judgment would be improper.  See UAW-GM, 579 N.W.2d at 
414 (holding, “If the meaning of an agreement is ambiguous or unclear, the 
trier of fact is to determine the intent of the parties.”).
6.  
CMS cites some older Michigan case law from the 1970s on this issue; however, 
the more recent case law cited in this opinion is controlling.
7.  
The trial court’s declaratory judgment provided that “CMS has not breached 
the gas purchase and sale agreement that is the subject of this lawsuit, and 
whose term is April 1, 1999 through March 31, 2009, and that CMS is not required 
to pay any money to Quicksilver for the remaining term of such agreement beyond 
the fixed price of $2.47 per MMBTU of natural gas.”
8.  
Quicksilver’s sixth issue challenges the trial court’s summary judgment and 
declaratory judgment concerning CMS’s breach of the UCC duties of good faith 
and fair dealing.  We need not address the remainder of Quicksilver’s 
third issue or its fourth issue because Quicksilver raised these arguments in 
the alternative, in the event we did not sustain its first and second issues.  
See Tex. R. App. P. 47.1.