ACCEPTED
04-15-00153-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
9/23/2015 11:47:20 PM
KEITH HOTTLE
CLERK

NO. 04-15-00153-CV

| | | |
|---|---|---|
| TINA M. ALLEN SOUZA | § | COURT OF APPEALS |
| | § | |
| vs. | § | |
| | § | |
| HEATHER CLEMENT TESSMER | § | FOURTH DISTRICT OF TEXAS |

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
09/23/2015 11:47:20 PM
KEITH E. HOTTLE
Clerk

APPELLANT'S MOTION FOR REHEARING EN BANC

TO THE HONORABLE JUSTICES OF SAID COURT:

Appellant, TINA M. ALLEN SOUZA, submits this her Motion for Rehearing En Banc, and in support thereof shows:

*General*

1.      This Motion for Rehearing En Banc addresses the court's opinion of this cause delivered on August 19, 2015.  This cause is an appeal under the Texas Citizens Participation Act ("TCPA"), which is found at TEX. CIV. PRAC. & REM. CODE chapter 27.  The standard of review for TCPA appeals is de novo pursuant to *United Food & Commercial Workers Union v. Wal-Mart Stores, Inc.,* 430 S.W. 3d 508, 511 (Tex. App. – Fort Worth 2014, no pet.).  The court is to determine if the movant [appellant] and nonmovant [appellee] satisfy their burdens of proof in a three tier test: (1) The movant must first show by a preponderance of the evidence that the TCPA applies.  TEX. CIV. PRAC. & REM. CODE sec. 27.005(b).  (2) The nonmovant is to show by clear and specific evidence a prima facie case for

1

each essential element of the claim of the original lawsuit in question. TEX. CIV. PRAC. & REM. CODE sec. 27.005(c). (3) If (2) is satisfied, the movant must establish by a preponderance of the evidence each essential element of a valid defense to nonmovant's claim. TEX. CIV. PRAC. & REM. CODE sec. 27.005(d). "In determining whether a legal action should be dismissed under this chapter, the court *shall* consider the *pleadings* and supporting and opposing *affidavits* stating the facts on which the liability or defense is based." (emphasis added.) TEX. CIV. PRAC. & REM. CODE Sec. 27.006(a).

2. This court's evidentiary conclusions, which though based on some permissible evidence, did not consider the totality of the evidence before it. From the opinion, it appears that the court not only gave cursory and passing notice to appellant's affidavit attached to her motion to dismiss, but basically gave no consideration to the substantial body of evidence attached to appellee's original petition ("Petition Evidence"). This Petition Evidence impeaches appellee's affidavits and corroborates appellant's affidavit. The legal effect of this impeachment is as follows: (1) appellee fails in their burden to show by clear and specific evidence a prima facie case for each essential element of the claim of the original lawsuit in question, and/or (2) appellant establishes by a preponderance of the evidence each essential

2

element of a valid defense to appellee's claim, namely, truth. TEX. CIV. PRAC. & REM. CODE Sec. 73.005.

3. "Assertions of fact, not plead in the alternative, in the live pleadings of a party are regarded as formal judicial admissions. *Houston First Am. Sav. v. Musick*, 650 S.W. 2d 764 (Tex. 1983). A judicial admission that is clear and unequivocal has conclusive effect and bars the admitting party from later disputing the admitted fact. *Gevinson v. Manhattan Constr. Co.*, 449 S.W. 2d 458, 467 (Tex. 1969)." *Holy Cross Church of God in Christ v. Wolf*, 44 S.W. 3d 562, 568 (Tex. 2001). "Any fact admitted is *conclusively established* in the case without the introduction of the pleadings or presentation of other evidence." (emphasis added.) *Houston First Am. Sav.* at 767. In *Aetna Life Ins. Co. v. Wells*, 557 S.W.2d 144 (Civ. App. – San Antonio 1977, ref. n.r.e.), the San Antonio Court of Appeals stated:

> A judicial admission is generally defined as an express act of waiver by a statement in pleadings…which asserts the truth of an allegation. So long as the statement…stands unretracted, it is taken, for the purposes of the case, as true…. 9 Wigmore, Evidence § 2588 (3d ed. 1940). In Texas the term has been defined as a 'waiver of proof' in a judicial proceeding. *United States Fidelity & Guaranty Co. v. Carr*, 242 S.W. 2d 224, 229 (Tex. Civ. App. San Antonio 1951 writ ref'd)."

*Id*. at 147.

4. Appellee's Petition Evidence was not plead in the alternative and it was clear and unequivocal. Appellee's Petition Evidence are judicial admissions. At the hearing, appellant objected to the

3

introduction of the appellee's affidavits on various grounds, including that the affidavits "totally contradicts what they [appellee] have in their attachments to the original petition….It is not in conformity with her [appellee's] evidence, and, again, everything else on here, including that inconsistency with her [appellee's] own pleadings, is just not relevant to this TCPA hearing, and I object to their admission." RR Vol. 2 p. 32. "The party relying on his opponent's pleadings as judicial admissions of fact…must protect his record by objecting to the introduction of evidence contrary to that admission of fact and by objecting to the submission of any issue bearing on the fact admitted." *Houston First Am. Sav.* at 769.

5.      This motion will divide the argument into the three essential and pertinent phrases from the AVVO.com review that this court has focused on. This motion presumes that this court did not take into consideration what has been described in appellant's reply brief as the "first" AVVO review because the court does not mention it in their opinion. This "first" AVVO review was admitted by the trial court at the hearing on the motion to dismiss, but was not a part of any pleading or affidavit and was objected to as hearsay. Appellee's brief, however, relied substantially upon this "first" AVVO review in her argument.

*The firm refused to send my case files to me until I "replenished" my fund….*

6.      Appellee argued, and the court in it's opinion apparently agreed, that "…Souza accused Tessmer of not returning her case file…." Opinion at 5. Appellant did not state in her review that appellee did not return her case file. Rather, appellant stated that appellant refused to send her case file until she replenished her fund. In fact, appellant, in her affidavit, stated the following: "…my file was mailed to me by regular mail on April 4, 2014." CR 72 ¶8. Appellant *never* stated that her file was not returned. Appellant presented proof of her statement with an email exchange with appellee. Appellant, in her affidavit, attached an email dated March 6, 2014, EXHIBIT "BB." In this email, which is addressed to Tessmer and other employees, appellant stated the following: "This morning and this afternoon Tammy Fisher [appellee's operations manager] refused to provide me any information when I called twice to ask for this document, and was told by Tammy I WOULD NOT receive anything from your office until I made the $2000 payment to leave a trust amount of $2500." CR 79. Appellee's response from Tammy Fisher was: "Your email was automatically routed to me because your trust account balance is below the required amount as indicated in your Professional Services Contract. My understanding from our last conversation is that we may expect to receive your payment as early

as today." CR 82. Appellee is not only *not contesting* appellant's assertion, appellee is also essentially agreeing by stating that they are *expecting payment*. This email response is effectively an admission that appellee will not provide appellant *anything* until appellant has paid $2000. It is proof by the preponderance of the evidence of the defense of truth.

7.     The Petition Evidence also offers a very different story. The entry for the paralegal Helstrom on 03/06/14, the same day as the above email, states the following: "Drafted Motion and Order for Withdrawal of Counsel: Sent email to Client;" CR 46. So, while Tammy Fisher was sending an email to appellant telling her they are expecting her payment on March 6, 2014, Heidi Helstrom is preparing and billing to appellant a motion and order for withdrawal. The reason this is pertinent is because when counsel withdraws from a case, the Texas Disciplinary Rules of Professional Conduct ("Ethics Rules") provides a procedure for withdrawal. This procedure is provided Ethics Rule 1.15(d). This procedure includes "surrendering papers and property to which the client is entitled." Given that surrendering papers and property is required upon withdrawal, it appears that appellee was preparing to withdraw, but wanted to collect the $2000 their contract permitted them to insist on *prior* to filing the motion to withdraw. In effect, attempting to hold appellant's file for ransom (by demanding replenishment of appellant's trust

6

account balance) *prior* to being required to provide the file to appellant for *free.*

8.      Appellant did not accuse appellee of not returning her file in the AVVO.com review.  Appellant stated that appellee refused to send her case files to her until she "replenished" her fund, and the evidence indicates that this statement is *true,* i.e., appellant proved the defense of truth as provided in the TCPA.

*even though I owed them nothing and had fired them with a credit left on my balance*

9.      The billing process provided in appellee's contract provides for billing within five days of the last day of the month, the balance of which will be deducted from the $2500 retainer, with a requirement that the retainer balance be maintained at $2500.  This type of contract is sometimes called an "evergreen contract," because there must always be a trust account balance equal to the initial retainer.  CR 12-21.  This form of billing can result, however, in some controversy, as it did in this case, when the client is unable to maintain the $2500 trust account balance, yet is current with the billing procedure.  This would, in essence, be much like a contract with a client to provide services without a retainer, and bill at the end of the month. Typically during the month, counsel with this type of contract would not

contact their client and tell them they are behind on the bill (which they invariably would be if the attorney is working on their case) because they haven't submitted a bill to the client yet.

10.     In this case, though appellant was unable to maintain her trust account balance at $2500, appellant was not "behind" in her bill on March 3, 2014, because she had completely paid her February bill and pursuant to the billing procedure provided for in the contract, she would not be "behind" on payment for services provided until she received her next bill, which would be on March 31, 2014, at the earliest.  So, according to the contract, appellant did not owe appellee a balance on March 3, 2014, after she paid appellee $2500.  In fact, appellant had a balance in her favor.  The Affidavit of Tammy Fisher, states, and this court agreed in it's opinion, that appellant owed appellee an additional $1,727.25 for work performed March 1st through March 3rd.  RR Vol 3 Respondent's Exhibit 1 p. 2.  This Affidavit, however, contradicts the Petition Evidence, namely, the terms of the contract between appellant and appellee.  CR 15.

11.     The crux of the AVVO.com review statement, however, must be viewed from the perspective of the time it was published, which is not stated in the evidence, but it is safe to say that it was immediately prior to August 25, 2014, the date that Tessmer sent appellant a letter demanding removal of

the review. CR 55-58. This letter also included the March 31, 2014, and April 30, 2014, bills as stated in appellant's affidavit. CR 74 ¶11. Furthermore, as appellant also stated in her affidavit: "Plaintiff [appellee] never submitted these bills to me prior to August 25, 2014." CR 74 ¶11. These bills, along with the February 28, 2014, bill can be located at CR 42-53.

12. Understanding what appellant "knew" immediately prior to August 25, 2015 requires a detailed view of the March 31, 2014, and April 30, 2014, bills. This court, in its opinion, appears to have relied only on the affidavit of Tammy Fisher ("Fisher Affidavit") and the affidavit of Heidi Helstrom ("Helstrom Affidavit"). RR Vol. 3 Respondent's Exhibit 1 and Respondent's Exhibit 2, respectively.

13. Fisher Affidavit states that appellee agreed to take on appellant's case for a $2500 retainer, of which only $1500 was paid upfront. Appellant was unable to pay the additional $1000 on February 2, 2014, as agreed to. When appellant contacted appellee on February 18, 2014, and indicated she would not be able to pay until the first week of March, 2014, Fisher states: "I informed Ms. Souza that she would receive her February 2014 [bill] before then and that the amount due would be larger than the $1000 needed to complete her deposit." It is interesting to compare this statement with the

9

February 28, 2014, bill, which, if one adds up all charges on and before February 18, 2014, appellee had already billed $1,785,75 for services, and yet had only been paid an initial deposit of $1,500. So, when Fisher is informing appellant that she should pay the balance of her retainer in February, she states nothing about appellant already being $285.75 in arrears on February 18, 2014. Yet Fisher emphasizes, and this court quotes this portion of Fisher Affidavit: "On March 3, 2014, Ms. Souza paid $2,500.00. It should be noted that, at that time, Ms. Souza owed $2,417.80 from February 2014 plus $1,727.25 for work performed March 1st through March 3rd, 2014, for a grand total of $4,145.05" The fact of the matter is, appellant did not owe anything on March 3, 2014, because pursuant to the terms of the contract written by appellee, appellant had a positive balance. CR 15. The true contract issue was that appellant had not replenished her fund up to the full $2500. Despite this, appellant had a balance with a credit. Fisher Affidavit concludes: "Ms. Souza never had a credit balance in her account, as her bills were never paid in full from February 2014 forward." Petition Evidence shows appellant had a credit balance on Feburary 1, 2014, and on March 3, 2014. This last statement by Fisher and the statement that appellant owed $1,727.25 on March 3, 2014, contradict the Petition Evidence, which are judicial admissions.

14. Appellant, in her affidavit, states that prior to August 25, 2014, she never received the bills for March 31, 2014, and April 30, 2014. Yet Tammy Fisher, who was the operations manager of appellee's firm, does not contest appellant's statement in her affidavit. Fisher does not swear that these bills were sent to appellant within 5 days of March 31, 2014, and April 30, 2014, as the contract required.

15. Therefore, appellant's statement that she had a credit left on her balance with appellee is *true,* i.e., appellant proved the defense of truth as provided in the TCPA.

*BTW they never sent me back the credit*

16. Helstrom Affidavit states: "On March 19, 2014, Ms. Souza's original file was mailed to her by First Class Mail." CR 72 ¶8. However, if one studies the Petition Evidence, the April 30, 2014, bill states the following under Helstrom's billed services: "04/04/14 Drafted enclosure letter to Client: Organized file to send to client:" CR 43. This Petition Evidence not only contradicts Helstrom Affidavit, it corroborates appellant's affidavit, wherein she stated: "…my file was mailed to me by regular mail on April 4, 2014." CR 72 ¶8.

17. Petition Evidence furthermore states in the March 31, 2014, bill that appellee withdrew as counsel for appellant by court order obtained on March

26, 2014. This bill states that Attorney Cynthia Smith: "03/26/14 Attended hearing on Motion for Withdrawal of Counsel." CR 46. On the next page, the bill states that Helstrom: "03/27/14 Sent email to Client regarding conformed Order on Motion for Withdrawal of Counsel;" CR 47. If one studies the March 31, 2014, bill and the April 30, 2014, bill, there are no other entries regarding matters sent to appellant, other than Helstrom's notation stated above: "04/04/14 Drafted enclosure letter to Client: Organized file to send to client:" CR 43.

18. Ethics Rule 1.15(d) states that upon termination of representation, a lawyer shall surrender papers and property to the client, which appellee did on April 4, 2014, not March 18, 2014. The Rule also states that the attorney shall refund any advance payments of fee that has not been earned. In effect, this Rule requires a final accounting of all moneys paid and due. Appellant in her affidavit stated that prior to August 25, 2014, she never received the bills for March 31, 2014, and April 30, 2014. Therefore, appellant never received a final accounting. Appellee, who presented Fisher Affidavit and Helstrom affidavit at the trial court hearing, provides absolutely no evidence that a final accounting was provided. In fact, when Helstrom in her affidavit states that she mailed appellant's file on March 18, 2014, she curiously does not attach a copy of her cover letter. And, of

course, the reason is that the cover letter would be dated April 4, 2014, which would indicate that the appellant was being truthful. The same principal applies with regards to the "credit." Appellee withdrew, and should have provided an accounting immediately after withdrawing on March 26, 2014. Given the apparent detail of appellee's bills where appellee billed appellant for "everything," it should be clear that appellee never provided appellant a final accounting.

19. Therefore, appellant's statement that appellee never sent back her credit is *true,* i.e., appellant proved the defense of truth as provided in the TCPA.

20. The court, in it's opinion at p. 4, states that this statement "falsely imputes criminal conduct…" This is an assumption, not a fact. When one considers the Petition Evidence, this statement is more in the nature of an injury to a person's office, business, profession, or calling. However, in this case, appellant's AVVO.com review was a truthful declaration that appellee managed the withdrawal from her case in an unethical manner.

21. This Court should recall the legislature's mandate for the construction of the Texas Citizen Participation Act: "This chapter shall be construed liberally to effectuate its purpose and intent fully." TEX. CIV. PRAC. & REM. CODE Sec. 27.001(b).

*Prayer for Relief*

WHEREFORE, PREMISES CONSIDERED, appellant requests that this court withdraw the opinion issued on August 19, 2015, and issue a new opinion finding that the trial court erred in not granting appellant's motion to dismiss and awarding her attorney's fees, costs, and sanctions. Appellant requests that this court grant appellant's motion to dismiss appellee's entire suit with prejudice and with a finding that this suit was filed solely for the purpose of harassing the appellant to withdraw her unfavorable online review, thus infringing on appellants exercise of the right of free speech. In addition, appellant requests that this Court assess attorney's fees against appellee as stated in appellant's counsel's affidavit and that this Court assess a sanction against appellee, or in the alternative, that this Court remand this matter to the trial court for a hearing on the imposition of the sanction. Appellant requests general relief.

Dated this 23rd day of September, 2015.

Respectfully submitted,

RONALD S. GUTIERREZ, LAWYER
Las Colinas Station
P. O. Box 143243
Irving Texas 75014-3243
Office: (512) 222-3488
Facsimile: (512) 233-2786
Email: rsg.lawyer@gmail.com

By:    /s/ *Ronald S. Gutierrez*
       Ronald S. Gutierrez
       State Bar No. 08644410

ATTORNEY FOR APPELLANT

## Certificate of Compliance

I hereby certify that the foregoing instrument is 3114words in length, including and excluding those matters provided in TEX. R. APP. P. 9.4(i)(2)(D) and 9.4(i)(3).

/s/ *Ronald S. Gutierrez*
Ronald S. Gutierrez

15

**Certificate of Service**

I hereby certify that a true and correct copy of the foregoing instrument was delivered to plaintiff by serving her attorney of record, TESSMER LAW FIRM, P.L.L.C., 7800 IH-10 West, Suite 830, San Antonio, Texas 78230, via eServe through eFile (if available), email at info@tessmerlawfirm.com and/or via facsimile at (210) 368-9729 on September 23, 2015.

/s/ *Ronald S. Gutierrez*
Ronald S. Gutierrez

16