Jess Dewayne DUTTON, Appellant,

v.

Vicky Lynn DUTTON, Appellee.

No. 11–99–00251–CV.

Court of Appeals of Texas,
Eastland.

May 4, 2000.

John Saringer, Scott Seamster, Wagstaff, Alvis, Stubbeman, Seamster & Longacre, Abilene, for appellant.

John M. Bailey, Glandon & Scarbrough, Abilene, for appellee.

Panel consists of: ARNOT, C.J., and WRIGHT, J., and McCALL, J.

## OPINION

TERRY McCALL, Justice.

Jess Dewayne Dutton appeals the trial court's judgment in his divorce from Vicky Lynn Dutton. Because we hold that his contentions on appeal are precluded by a judicial admission made in the trial court, we affirm.

### Background Facts

The Duttons were married from 1984 to 1998. In 1995, Vicky's parents, the Vinsons, conveyed 150 acres of land (the property) to "VICKY L. DUTTON and husband, JESS D. DUTTON." Although the Duttons executed a promissory note for $18,000 to the Vinsons, the Vinsons forgave the note in 1996. The Duttons built a house on the property and made other improvements. Vicky filed a sworn inventory and appraisement in which she listed the property as her separate property. At the final hearing, Vicky introduced her inventory and appraisement into evidence.

Vicky also testified about the acquisition of the property. She testified that the property belonged to her father's family and that her father "grew up" on the property. She testified that the property was her "inheritance" and that her father "wanted to see [her] be able to use it while he was alive." She also testified that she had Jess' name put on the deed because she "felt pressured" and that she "didn't feel like [she] would ever be able to use it if his name wasn't on it." Vicky maintained at trial that her parents intended the property as a gift to her alone. The Vinsons did not testify.

Jess also filed a sworn inventory and appraisement with the trial court. In his inventory, he listed the property as community property. Jess did not introduce his inventory and appraisement into evidence. He disputed Vicky's characterization of the property in his testimony:

Q: Now, she's claiming the land is solely hers?

A: No. The land was a gift to both of us through her parents because we was going to buy a piece of land and her parents talked us out of it.

On direct examination, Jess also testified as follows:

Q: Do you have the financial ability to pay your wife for any *community property interest that this Court might award her* if the Court were to award you the house and property?

A: Yes, sir.

\* \* \*

Q: In your opinion what do you believe would be fair for this Court to do in this divorce action as far as awarding property?

A: They award me the house and my son and "X" amount of acres to go with

that house around it to get that air condition (sic) system and that tank in there, and *then she can have the land* and the rest. (Emphasis added)

Even though Jess stated that "[t]he land was a gift to both of us," the record reflects that, at trial, Jess was contending that the property was community to rebut Vicky's assertion that it was her separate property.

After the parties rested and closed, the trial court said, "I'm going to have to give this some thought and *review each party's inventories.*" (Emphasis added) Finding that the property was community property, the trial court awarded the entire property to Vicky. The court also awarded Jess a money judgment of $40,000 plus 12 percent interest until paid, secured by a lien against the property. On appeal, Jess argues that he had a separate property interest in the property because it was a joint gift to him and Vicky.

### Division of the Marital Estate

The trial court must make what it deems to be a "just and right" division of the marital estate, "having due regard for the rights of each party and any children of the marriage." TEX. FAM. CODE ANN. § 7.001 (Vernon 1998). The trial court exercises wide discretion in the division of marital property. Its division of marital property will not be disturbed on appeal unless it is shown that the court has clearly abused its discretion. *Jacobs v. Jacobs*, 687 S.W.2d 731, 733 (Tex.1985); *Murff v. Murff*, 615 S.W.2d 696, 698 (Tex. 1981); *Hedtke v. Hedtke*, 112 Tex. 404, 248 S.W. 21, 23 (1923). The test for abuse of discretion is whether the trial court acted without reference to any guiding rules or principles or whether the act was arbitrary and unreasonable. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex.1990).

The trial court may not, however, divest a party of his or her separate prop-

erty. *Eggemeyer v. Eggemeyer*, 554 S.W.2d 137, 142 (Tex.1977). Any property acquired during marriage is presumed to be community property in the absence of clear and convincing evidence to the contrary. TEX. FAM. CODE ANN. § 3.003 (Vernon 1998). Property received by gift during marriage is the separate property of the receiving spouse. TEX. FAM. CODE ANN. § 3.001 (Vernon 1998); *Perez v. Perez*, 587 S.W.2d 671, 673 (Tex.1979). A joint gift to a husband and wife is not community property; rather, each gets a one-half undivided separate interest in the gift. *Roosth v. Roosth*, 889 S.W.2d 445, 457 (Tex.App.—Houston [14th Dist.] 1994, writ den'd); *McLemore v. McLemore*, 641 S.W.2d 395, 397 (Tex.App.—Tyler 1982, no writ); *King v. Summerville*, 80 S.W. 1050, 1052 (Tex.Civ.App.), *aff'd*, 98 Tex. 332, 83 S.W. 680 (1904).

There is nothing in the deed to indicate that the transaction was a gift. A deed from a third party in the names of both husband and wife raises a presumption that the property is community rather than jointly-held separate property. *Dakan v. Dakan*, 125 Tex. 305, 83 S.W.2d 620, 626 (1935). To overcome the presumption of community property, Jess had to establish at trial that the property was his separate property by clear and convincing evidence. Section 3.003. However, we review the trial court's characterization of marital property by conducting an analysis of the legal and factual sufficiency of the evidence offered at trial. See *McElwee v. McElwee*, 911 S.W.2d 182 (Tex.App.—Houston [1st Dist.] 1995, writ den'd).

On appeal, Jess argues that the law is settled that a joint gift to a husband and wife does not result in a gift to the community estate. *McLemore v. McLemore, supra.* We note that in *McLemore* and the cases upon which it relies, the person asserting the separate property interest did so in the trial court first. For

example, the defendant after a bench trial in *McLemore* filed a motion for new trial on the ground that the house was separate property. Jess did not challenge the trial court's findings of facts or conclusions of law. Neither in his pleadings nor at trial did he contend that the property was partly his separate property. The court simply found that the property was community property as Jess had asserted in his sworn inventory and appraisement. While he was not required to file a motion for new trial, Jess should have made the trial court aware, at some point, of the complaint he now presents on appeal. TEX. R.APP.P. 33.1; TEX.R.CIV.P. 324.

In view of Jess' inventory and appraisement and of his failure to preserve error, we hold that the trial court's determination was not so contrary to the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex. 1986).

### Judicial Admission

Jess argues that he had a separate property interest in at least part of the property.[1] Vicky, however, argues that Jess' characterization of the property as community property in his inventory and appraisement constitutes a judicial admission. Such an admission, she contends, bars him from now asserting that he had a separate property interest in the property. We agree.

Judicial admissions estop the party who made them from challenging their truth. Five conditions must occur before a party's admission is conclusive against him: (1) the declaration relied upon must have been made in the course of a judicial proceeding; (2) the declaration was contrary to an essential fact embraced in the theory of recovery or defense asserted by the party; (3) the statement was deliberate, clear, and unequivocal; (4) giving conclusive effect to the declaration would not run contrary to public policy; and (5) the declaration related to a fact upon which a judgment for the opposing party was based. *Griffin v. Superior Insurance Company,* 161 Tex. 195, 338 S.W.2d 415, 419 (1960); *United States Fidelity & Guaranty Co. v. Carr,* 242 S.W.2d 224, 229 (Tex.Civ.App.—San Antonio 1951, writ ref'd).

Although *Griffin* and *Carr* involved testimonial assertions, appellate courts have given preclusive effect to sworn inventories and appraisements filed with the trial court. *Roosevelt v. Roosevelt,* 699 S.W.2d 372, 374 (Tex.App.—El Paso 1985, writ dism'd); see *Tschirhart v. Tschirhart,* 876 S.W.2d 507, 509 n. 1 (Tex.App.—Austin 1994, no writ). In *Roosevelt,* the wife filed an inventory and appraisement listing some jewelry as her separate property and some jewelry as community property. The court of appeals held that the trial court could not characterize all the jewelry as separate property and that the wife could not have introduced evidence to support such a characterization because her sworn assertions in the inventory and appraisement prevented her from claiming all of the jewelry as her separate property.

*Tschirhart* held that a party challenging the sufficiency of the evidence to support the trial court's division of property could not rely on his sworn inventory and appraisement that was filed with the trial court but was not admitted into evidence. The *Tschirhart* court did state in a footnote that an inventory, like a pleading,

---

1. Jess acknowledges that the $18,000 note, even though forgiven, might render a portion of the property community property. He calculates that, from the purported purchase price of $56,250, $38,250 or 68 percent of the property's value was a gift. Thus, he would have at least a 34 percent separate property interest in the property. We express no opinion on the effect of the forgiven note on the characterization of the property.

could not be used as evidence to support a positive assertion by a party on appeal but could be used to estop that party from challenging his prior admission. *Tschirhart v. Tschirhart, supra*; see also *Poulter v. Poulter*, 565 S.W.2d 107, 110 (Tex.Civ. App.—Tyler 1978, no writ); *Bokhoven v. Bokhoven*, 559 S.W.2d 142, 144 (Tex.Civ. App.—Tyler 1977, no writ).[2]

■ In the present case, Jess filed a sworn inventory and appraisement listing the property as community property. That statement met the criteria set forth in *Griffin* and *Carr*, and it constituted a judicial admission. The statement was made in the course of a judicial proceeding. It was contrary to Jess' position on appeal and was made deliberately, clearly, and unequivocally. It would further the public policy of this State to give effect to the statement: property accumulated during the marriage is presumed to be community property in the absence of clear and convincing evidence to the contrary. Section 3.003. Finally, as discussed below, the statement relates to a fact upon which judgment for Vicky might be based.

Jess cites cases for the proposition that a judicial admission is waived if the opposing party introduces evidence contrary to the admission. See *Industrial Disposal Supply Company, Inc. v. Perryman Brothers Trash Service, Inc.*, 664 S.W.2d 756, 763–64 (Tex.App.—San Antonio 1983, writ ref'd n.r.e.); *Wilkins v. Cook*, 454 S.W.2d 769, 770–71 (Tex.Civ.App.—East-land 1970, writ ref'd n.r.e.); *Starks v. City*

*of Houston*, 448 S.W.2d 698, 699–700 (Tex. Civ.App.—Houston [1st Dist.] 1969, writ ref'd n.r.e.); *Dallas Transit Company v. Young*, 370 S.W.2d 6, 10–11 (Tex.Civ. App.—Dallas 1963, writ ref'd n.r.e.); *Restelle v. Williford*, 364 S.W.2d 444, 446 (Tex. Civ.App.—Beaumont 1963, writ ref'd n.r.e.). He contends that, when Vicky introduced the warranty deed, closing statement, and release of lien into evidence, she waived any judicial admission that he made because those pieces of evidence establish that the Vinsons deeded the property as a joint gift to both him and Vicky.[3]

■ Jess' argument fails for two reasons. First, a gift cannot occur absent a donative intent by the grantor. *Scott v. Scott*, 805 S.W.2d 835, 840 (Tex.App.—Waco 1991, writ den'd); *Thompson v. Lawson*, 793 S.W.2d 94, 96 (Tex.App.—Eastland 1990, writ den'd). The grantor's donative intent at the time of the conveyance is a controlling factor to determine the nature of a gift. *Rusk v. Rusk*, 5 S.W.3d 299, 303 (Tex.App.—Houston [14th Dist.] 1999, pet'n den'd). Although the parties agree that the property was a gift, Vicky testified that the Vinsons intended it as a gift to her alone. No other evidence was heard about the grantors' donative intent.[4]

■ The fact that the deed bears both Jess' and Vicky's names does not conclusively establish a joint gift. Extrinsic evidence is important in cases where the nature of a gift is raised. In *Roosth*,

---

2. Both *Poulter* and *Bokhoven* involved attempts by a party on appeal to support a positive assertion with an unadmitted inventory and appraisement. *Poulter*, like *Tschirhart*, involved an attempt to challenge the division of property based on the monetary value of the property as listed in the inventory and appraisement. The inventory in *Bokhoven* was not sworn. But see *Vannerson v. Vannerson*, 857 S.W.2d 659, 670–71 (Tex. App.—Houston [1st Dist.] 1993, writ den'd), holding that the trial court could take judicial notice of the contents of anything in the court's file and use the contents as evidence

to support its judgment. *Vannerson*, however, involved the trial court's, and not the appellate court's, use of the contents as evidence.

3. The record actually shows that Jess introduced the warranty deed into evidence as Respondent's Exhibit No. 1.

4. Unobjected-to hearsay is, of course, probative evidence. TEX.R.EVID. 802.

the wife claimed that certain wedding gifts were given to her alone, but she failed to adequately show which gifts they were. In *King*, the court noted that the deed on its face would give no notice to innocent purchasers that the property in question was not community property. The deed recited that the grantees gave the grantor "$10 cash and other valuable considerations" for the conveyance. The court went on to hold that the "extrinsic evidence introduced upon the trial clearly showed that [the mother] intended to convey the land to her son-in-law and daughter in equal parts."[5]

In the present case, the warranty deed and release of lien do not indicate that the conveyance was a gift. The deed states that the sale was made for consideration; the release states that the note was paid in full. Only the closing statement mentions a "[g]ift from sellers." That document would not be in the chain of title. Thus, Vicky's testimony about her parents' donative intent might have supported a finding by the trial court that the property was her separate property. That question is not presented here, however. What is important is that the evidence introduced does not compel the legal conclusion that her parents made a joint gift that vested undivided half-interests in the property in her and Jess.

The second flaw in Jess' argument is that the cases cited are distinguishable. In *Industrial Disposal Supply, Wilkins,* and *Starks,* the plaintiff suffered an adverse judgment, failing in his burden of proof at trial. In each case, the plaintiff attempted on appeal to use a judicial admission to support a positive assertion and override the jury's finding. *Dallas Transit* and *Restelle* both involved defendants who lost in the trial court and attempted to support their positive assertions on appeal with supposed judicial admissions. As noted above, judicial admissions will rarely support a positive assertion on appeal.

This is especially true when the party seeking to support a positive assertion with a judicial admission does not attempt to use that admission at trial. The rule of waiver embodied in the five cases cited by Jess requires a party to make positive assertions in the trial court first. This rule is consistent with Rule 33.1 which requires a party to make his request or objection in the trial court and to obtain a ruling thereon from the trial court in order to preserve error. The Texas Supreme Court cited *Starks, Dallas Transit,* and *Restelle* for the proposition that:

> The party relying on his opponent's pleadings as judicial admissions of fact, however, must protect his record by objecting to the introduction of evidence contrary to that admission of fact and by objecting to the submission of any issue bearing on the fact admitted.

*Houston First American Savings v. Musick,* 650 S.W.2d 764, 769 (Tex.1983).

Here, however, Vicky did not seek to rely on the judicial admission to support her contentions at trial. At trial, she contended that the property was her separate property. Instead, Vicky seeks on appeal to estop Jess from taking a position inconsistent with his theory at trial. In fact, there was no need to view the inventory as a judicial admission until Jess contended on appeal that the property was his separate property. He clearly regarded the property as community property when he testified at trial. He even requested the trial court to divide the property between him and Vicky. The rule of waiver stated

---

5. In *King,* the court also held that a recital in a later deed in the chain of title that the grantor and her husband had received the property in question as a gift from her mother was enough to put the subsequent purchasers on inquiry as to the nature of the property and the interests therein.

in the cases cited above is inapplicable in this case.

 The trial court could take judicial notice of the contents of its files. TEX. R.EVID. 201(b) and (c); see *Vannerson v. Vannerson, supra.* This court may take judicial notice, even if no one requested the trial court to do so and even if the trial court did not announce that it would do so. *Harper v. Killion,* 162 Tex. 481, 348 S.W.2d 521, 523 (1961). Thus, the trial court and this court can take judicial notice of the fact that Jess made an admission in his inventory. Furthermore, the trial court announced that it would consider "each party's inventories." Jess did not attempt to contend at trial that the property was anything but community property, and he did not withdraw the statement made in his inventory. He may not contend differently now. *Roosevelt v. Roosevelt, supra; Tschirhart v. Tschirhart, supra.*

The judicial admission in his inventory and appraisement estops Jess from denying that the property is community property. Given that fact, the trial court had broad discretion to make a fair and just division of the community estate. See *Murff v. Murff, supra; Hedtke v. Hedtke, supra.* We find no abuse of discretion in the trial court's division of the estate. We overrule Jess' sole issue for review.

### This Court's Ruling

The judgment of the trial court is affirmed.