

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  | § |  |
| --- | --- | --- |
| GUILLERMO RIVERA, | | No. 08-11-00287-CV |
| | § | |
| Appellant, | | Appeal from |
| | § | |
| v. | | 65th District Court |
| | § | |
| MARIA E. HERNANDEZ, | | of El Paso County, Texas |
| | § | |
| Appellee. | | (TC # 2009CM2794) |
| | § | |

## **O P I N I O N**

Guillermo Rivera appeals from a final decree of divorce alleging that the trial court mischaracterized his separate property as community property and divested him of his interest in the real estate in violation of constitutional and statutory mandates. Because we agree, we reverse and remand.

## FACTUAL SUMMARY

Even a cold reading of the reporter's record indicates that the trial was contentious and that Husband was at best an uncooperative witness. Because the outcome of this case is fact intensive, we recount the evidence in some detail.

### The Pleadings

Husband filed his original petition for divorce on April 20, 2009 and pled, rather generically:

*10. Separate Property*

> Petitioner owns certain separate property that is not part of the community estate of the parties, and Petitioner requests the Court to confirm that separate property as Petitioner's separate property and estate.

Nine days later, Wife filed her original counter-petition for divorce and asked the court divide the community estate disproportionately in her favor. She amended her petition on July 22, 2010 and sought reimbursement for funds expended by the community estate for payment of unsecured liabilities of Husband's separate estate and reimbursement to her separate estate for funds paid toward community indebtedness. More apropos to our review, she alleged:

> The community estate has expended funds or assets to make capital improvements on property claimed by [Husband] as separate property, giving rise to a claim for reimbursement in favor of the community estate and against [Husband's] separate estate. [Wife] requests the Court to reimburse the community estate for these expenditures, and, if necessary, impose an equitable lien on the property claimed by [Husband] as separate property to secure the claim.
>
> * * * *
>
> [Wife] is or was obligated on a debt secured by a lien on property claimed by [Husband] as separate property. The community estate has expended funds or assets for payment of that debt. Those expenditures have resulted in the reduction of the principal of that debt, giving rise to a claim for reimbursement in favor of the community estate and against [Husband's] separate estate. [Wife] requests the Court to grant [her] claim for reimbursement, order a division of the claim to [her], and, if necessary, impose an equitable lien on the property claimed by [Husband] as separate estate to secure the claim.

On September 3, 2009, Husband's attorney filed a request for admissions in which he asked Wife to admit or deny (1) that the property was purchased by Husband before marriage; and (2) that the property was purchased by Husband in 1981. Wife objected to the first inquiry because it asked the responding party "to admit to conclusions, opinions and statements of subjective

2

intent." She denied that the property was purchased in 1981.[1]

## The Inventories and Proposed Divisions

Wife filed her inventory on November 4, 2010 and her proposed division of property on May 2, 2011. Attached to her proposed division is a copy of Husband's inventory which he signed on September 30, 2010, but did not file with the trial court clerk. Husband's inventory identifies the real estate in issue as community property and states that he owns no separate property. Wife references that characterization in her proposed division in a section entitled "Economic Contribution/Reimbursement of Claims/Off Set." In the next section, she avers:

> [Husband] admitted that the whole property, land and structure at 147 Sun Park was the homestead of the community property under Texas Property Code 41.005 and article XVI.50 of the Texas Constitution. Husband [sic] claim to separate property is waived.

> Furthermore, when [Husband] asked [sic] if he could not identify what proportion or part of the loan belonged to the land and or to the structure he couldn't because it was so commingled that it was impossible to trace, the presumption is that the real estate and structure is community property, any doubt as to the characterized [sic] of property should be resolve [sic] in favor of the community estate.

Alternatively, she sought reimbursement for enhancement and then proposed that Husband's claim of separate property for the parcel of land "with a value of about $12,000.00 should be off set in favor of [Wife]" for Husband's wasting of assets.

Husband filed his proposed division of property on May 10, 2011. He alleged that the home and property at 147 Sun Park were separate property "with minimum reimbursement for wife". This conclusion was based on the following facts which he outlined:

- Property purchased by Husband in 1982 ($12,000)

- Construction on home began in March 1983

---

[1] The record reflects that the property was purchased in 1983.

- Warehouse built in 1983 ($22,000)

- Two mobile homes added to property in 1984 ($18,000)

- Storage facility built in 1985 ($5,000)

- Foundation for house poured in 1985 ($12,000 plus $18,000 in materials)

- Married Wife in 1992

- House valued at $140,000

Such was the procedural backdrop for the trial.

## **Trial to the Bench**

At trial, Husband introduced into evidence without objection a real estate lien note dated January 7, 1983, whereby Husband purchased the land at 147 Sun Park for $12,000. By its terms, mortgage payments were due on the 24th of each month beginning February 24, 1983. The note was paid in full and the lien released on March 23, 1992. Husband testified that he began living with Wife in April 1992. They were ceremonially married on June 12, 2004. During the marriage, a 3360 square foot home was built on the property. It was appraised at $170,000 in 2008 and the couple filed a designation of homestead on September 18, 2008.

Husband was cross examined concerning his inventory which characterized the property as belonging to the community estate and identifying no separate property. Not surprisingly, there was a bit of a row between the attorneys.

> [Mr. Chacon (counsel for Husband)] Judge, if it's listed as community property, Judge, it's a mistake on my part.

> [Ms. Gonzalez (counsel for Wife)] (Laughter)

> [Husband] But it's been very clear, from the pretrial report, that that's the issue in question.

4

[Judge Gutierrez]  Is [sic] the 147 Sun Park?

[Mr. Chacon]  Right.  That is very simply the issue in question.  That's what [sic] we have been here all this time, Judge.

[Ms. Gonzalez]  Well, Your Honor, he's not -- the presumption here is everything is community, unless it's noted.  I don't have any information on this inventory or in the pretrial that that specific property is what is contentioned [sic] as separate [sic] property.

[Judge Gutierrez]  So just --

[Ms. Gonzalez]  If --

[Judge Gutierrez]  Okay.  Well, hold on.  So Mr. Chacon, you're saying that when you filed this, you really meant to put that this is separate property in your allegation?

[Mr. Chacon]  That's correct, Your Honor.  And that's clear, even in the discovery that she's been provided.  I provided her with Exhibit 1, Exhibit 2 -- and everything that's leading to our issue -- otherwise, it wouldn't have been -- we wouldn't have been here, Judge.

[Ms. Gonzalez]  Well, Your Honor.

[Judge Gutierrez]  Okay.

[Ms. Gonzalez]  It's a premise of law that, you know, everything is presumed to be community property.  He would have to rebut the separate [sic] presumption.

[Judge Gutierrez]  Right.  Well, I think this is just -- this is just what he's alleging.  So the Court understands it, and the Court will now change it to  you're alleging that this is separate.

[Mr. Chacon]  Right.  Okay.

\* \* \* \* \*

[Ms. Gonzalez]  Sir, let's go back to your inventory, that you're claiming that is community property.  Can you read what is --

[Mr. Chacon]  Your Honor, we're -- we've already cleared that up, Judge.

[Judge Gutierrez]  Yeah.  That was a mistake.  That should be separate.

[Ms. Gonzalez] Well, Your Honor, at no time -- This case has been pending for many -- well, for more than a year. This is the first time that he says, 'Oops, I made a mistake.' He designated in his inventory that property as community property.

[Judge Gutierrez] Right. The Court understands that and Mr. Chacon has made it clear that was a mistake. Did you ever file this?

[Mr. Chacon] I don't remember Judge, I think I might have provided one that day, because we were here that day on November.

And I don't remember if I filed it or not, Judge --

[Ms. Gonzalez] Judge, I think it's late --

[Mr. Chacon] Probably not, Judge.

[Ms. Gonzalez] It's too late for him --

[Mr. Chacon] Judge, and I would appreciate -- Judge --

[Ms. Gonzalez] Now he's saying, 'Oops, I forgot.'

[Mr. Chacon] Judge, I would appreciate it if you would instruct counsel that I'm speaking. That I allowed her the same privilege of completing her sentence before she interrupts me.

[Judge Gutierrez] Okay.

[Ms. Gonzalez] Your Honor, my point here is I think it's too late after we already started this case, after we went into for [sic] temporary orders. After he's filing this on 9- -- I don't know if he filed it or not -- but he sent it to me on 9/30/2010 designating that as his community estate that now he says that I am sorry I made a mistake.

[Judge Gutierrez] Well, the Court is going to allow Mr. Chacon -- and the Court understands, that's what's in dispute. That's what's in dispute, 'Is it separate or is it community?' So the Court is going to allow Mr. Chacon to amend his inventory and appraisal. But the Court understands that this is what we're fighting about.

6

## The Decree and
## Findings of Fact and Conclusions of Law

The decree awarded all of the property, land and improvements, to Wife. Upon timely request, the trial court entered written findings of fact and conclusions of law. We are concerned with five of them.

1. [Husband] and [Wife] were married on June 12, 2004.

* * * * *

12. During the marriage, [Husband] and [Wife] acquired the following property other than by gift or inheritance with the values shown: 147 Sun Park, Socorro, Texas.

13. During the marriage, a structure was built which the parties characterized as their homestead and community property estate.

14. During the marriage of the parties, the property at 147 Sun Park, Socorro, Texas, was mortgaged several times under both parties names. The last loan was obtained on September 18, 2006 for the amount of $100,000. The property was valued at $170,000.00. Nevertheless, at the hearing the parties stipulated a lower value of $148,000.00, as per central appraisal district taxation value.

* * * * *

19. The inventory filed by [Husband] on September 30th, 2010, characterized the property at 147 Sun Park, Socorro, Texas, as the community property of the parties. No other form of tracing or clear and convincing evidence to overcome the community presumption was presented.

### ISSUES FOR REVIEW

Husband brings four issues for review, complaining that (1) the trial court erred in characterizing separate property as community property; (2) there is insufficient evidence to support the trial court's finding that the real property was acquired during marriage; (3) the trial court's award of his separate property to Wife constitutes an abuse of discretion; and (4) he has been divested of his separate estate. Collectively, he presents one overarching issue of pure

7

characterization. Is the realty community or separate property? Our discussion requires that we address Wife's contentions, and the trial court's findings, that (1) designation of property as homestead affects characterization, (2) community indebtedness secured by allegedly separate realty affects characterization, (3) the inventory characterization of the property as community is binding, and (4) Husband's testimony that the house is owned by the children is a quasi-admission. We must then determine whether the deed and release of lien constitute clear and convincing evidence that the real estate was purchased before marriage so as to defeat the community property presumption.

## CHARACTERIZATION OF PROPERTY

### Standard of Review

In a bench trial, findings of fact are the equivalent of a jury answer to the special issues. *Associated Telephone Directory Publishers, Inc. v. Five D's Publishing Co.,* 849 S.W.2d 894, 897 (Tex.App.--Austin 1993, no writ); *Lorensen v. Weaber,* 840 S.W.2d 644 (Tex.App.--Dallas 1992), *rev'd on other grounds sub nom.; Exxon Corp. v. Tidwell,* 816 S.W.2d 455, 459 (Tex.App.--Dallas 1991), *rev'd on other grounds,* 867 S.W.2d 19 (Tex. 1993); *A-ABC Appliance of Texas, Inc. v. Southwestern Bell Tel. Co.,* 670 S.W.2d 733, 736 (Tex.App.--Austin 1984, writ ref'd n.r.e.). We review a trial court's findings of fact for both legal and factual sufficiency. *BMC Software Belgium, N.V. v. Marchand,* 83 S.W.3d 789, 794 (Tex. 2002); *Catalina v. Blasdel,* 881 S.W.2d 295, 297 (Tex. 1994). In a traditional legal sufficiency review, we consider the evidence and inferences that tend to support the findings and disregard all evidence and inferences to the contrary. *Bernal v. Chavez,* 198 S.W.3d 15, 18 (Tex.App.--El Paso 2006, no pet.); *Catalina,* 881 S.W.2d at 297. If any probative evidence supports the factual finding, it

must be upheld. *Bernal,* 198 S.W.3d at 18. In conducting a traditional factual sufficiency review, we consider all the evidence, including that which tends to prove the existence of a vital fact in addition to evidence which tends to disprove its existence. *Id.* The trial court's finding of fact must be so against the great weight and preponderance of the evidence as to be manifestly wrong. *Id.* The trier of fact determines the weight to be given to the testimony and resolves any conflicts in the evidence. *Id.* at 19.

But traditional sufficiency review is heightened when the burden of proof is clear and convincing evidence. *In re J.F.C.,* 96 S.W.3d 256, 266-67 (Tex. 2002); *In re C.H.,* 89 S.W.3d 17, 25 (Tex. 2002). In a legal sufficiency review, we look at all the evidence in the light most favorable to the fact finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that the finding was true. *In re J.F.C.,* 96 S.W.3d at 266. In so doing, we must assume that the fact finder resolved disputed facts in favor of its finding if a reasonable fact finder could do so. *Id.* We should disregard all evidence that a reasonable fact finder could have disbelieved or found to be incredible, but this does not mean that we must disregard all evidence that does not support the finding. *Id.* If we determine that no reasonable fact finder could form a firm belief or conviction that the fact is true, then we must conclude that the evidence is legally insufficient. *Id.* In a factual sufficiency review, we must give due consideration to evidence that the fact finder could reasonably have found to be clear and convincing. *Id., citing In re C.H.,* 89 S.W.3d at 25. We are to consider whether disputed evidence is such that a reasonable fact finder could not have resolved the dispute in favor of its finding. *Id.* "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not

9

reasonably have formed a firm belief or conviction, then the evidence is factually insufficient."
*In re J.F.C.,* 96 S.W.3d at 266.

## Principles of Characterization

All property on hand at the dissolution of marriage is presumed to be community property. *Tate v. Tate,* 55 S.W.3d 1, 4 (Tex.App.-El Paso 2000, no pet.); TEX.FAM.CODE ANN. § 3.003(a)(Vernon 2006). It is a rebuttable presumption, requiring a spouse claiming assets as separate property to establish their separate character by clear and convincing evidence. *Id.;* TEX.FAM.CODE ANN. § 3.003(b). Property owned before marriage, or acquired during marriage by gift, devise or descent, is separate property. *Id.;* TEX.FAM.CODE ANN. § 3.002. Where an asset is purchased during marriage with monies traceable to a spouse's separate estate, the asset may appropriately be characterized as separate property. *Pace v. Pace,* 160 S.W.3d 706, 711 (Tex.App.--Dallas 2005, pet.denied).

Characterization of property is determined by the time and circumstances of its acquisition. *Leighton v. Leighton*, 921 S.W.2d 365, 367 (Tex.App.--Eastland 1996, no writ), *citing Carter v. Carter,* 736 S.W.2d 775, 780 (Tex.App.--Houston [14th Dist.] 1987, no writ). This doctrine, known as "inception of title." arises when a party first has right of claim to the property by virtue of which title is finally vested. *Scott v. Estate of Scott*, 973 S.W.2d 694 (Tex.App.--El Paso 1998, no pet.).

## Effect of Homestead Designation

Under Texas law, a homestead may be community property or the separate property of one of the spouses. TEX.FAM.CODE ANN. § 5.001 (West 2006). Possession of a homestead interest is not dependent upon ownership; a person is permitted to hold homestead rights in his or

her spouse's separate property. *Denmon v. Atlas Leasing, L.L.C.,* 285 S.W.3d 591, 595 (Tex.App.--Dallas 2009, no pet). Here it is undisputed that the parties jointly filed a designation of homestead upon completion of the house. Wife's signature to the homestead declaration did not alter the characterization of the realty if Husband proved he owned the property prior to marriage. It is this principle which leads directly to the next issue. Because the property was homestead, it could not be sold or encumbered without Wife's joinder. TEX.PROP.CODE ANN. § 53.254(c)(West 2007); TEX. CONST. art XVI, § 50(b)(West Supp. 2013).

## Effect of Encumbrance by Collateralization

Simply stated, the fact that Husband and Wife borrowed funds during marriage for which the real estate served as collateral has no effect on its characterization whatsoever. A similar argument was raised in *Leighton*. There, the court properly noted that once separate property character attaches, that character does not change because community funds are spent to improve the property. "[T]he character of property does not change because both parties sign a note, or because the names of both parties are on the deed of trust." *Leighton,* 921 S.W.2d at 367. And in *Girard,* husband and wife borrowed $135,000 from a lending institution to build a home on the husband's separate property. *Girard v. Girard,* 521 S.W.2d 714, 716 (Tex.Civ.App.--Houston [1st Dist.] 1975, no writ). Both spouses signed the note for which the realty served as collateral. *Id.* While the community estate may well have had a claim for reimbursement, it had no right, title or interest to the land. *Id.* at 717. *See also In the Matter of the Marriage of Jordan*, 264 S.W.3d 850, 856 (Tex.App.--Waco 2008, no pet.)(fact that home was refinanced during marriage does not alter character of separate property). Even the execution by both parties of a home equity loan does not convert separate property to

11

community property. *Langston v. Langston*, 82 S.W.3d 686, 687-88 (Tex.App.--Eastland 2002, no pet.)(reversing where trial court ruled that a community property interest in real estate was created by the execution of the note evidencing the loan).

## **Effect of Mistake in Husband's Inventory**

Wife maintains that Husband's sworn inventory constitutes a judicial admission that the property in question is community property. A judicial admission establishes the issue in dispute as a matter of law in behalf of the adversary of the one making such admission. *Valdes v. Moore,* 476 S.W.2d 936 (Tex.Civ.App.--Houston [14th Dist.] 1972, writ ref'd n.r.e.). First, that argument was not raised in the trial although it was lodged in response to the motion for reconsideration. Second, the trial court did not find that the inventory constituted a judicial admission that was binding on Husband or the court. She merely found that the inventory characterized the property as community. Third, the court took judicial notice of the *pleadings* but not judicial notice of the *inventory* which was not filed or admitted into evidence. Fourth, the court on the record allowed Husband to amend his inventory. Having said this, we recognize that the case law is far from consistent in how this issue should be resolved. Because it is a matter of critical importance to family law practitioners, we must explore a laundry list of cases.

### *Development of the Case Law*

We will consider the cases in chronological order beginning with an opinion that issued from this court in 1985. In *Roosevelt v. Roosevelt*, 699 S.W.2d 372 (Tex.App.--El Paso 1985, writ dism'd), the trial court awarded the wife all of her jewelry as separate property. Prior to trial, she filed a sworn inventory in which she itemized 29 pieces of jewelry as separate property and 18 items as community property. On appeal the court found that by listing some

12

pieces as community property, Mrs. Roosevelt had judicially admitted characterization. *Id.* at 374. No evidence was offered to establish that all of the items characterized as community property were in fact separate property. In sustaining the Husband's point of error, the court added that such evidence would not have been admissible, with a proper objection, in view of the judicial admission. *Roosevelt* is distinguishable because in this case, Husband introduced into evidence the deed, promissory note, and release of lien without objection.

The next case of interest is *Myers v. Myers,* No. 05-93-00906-CV, 1994 WL 137244 *6, (Tex.App.--Dallas, April 15, 1994, no writ). There, the wife challenged the admissibility of Mr. Myers first amended inventory which characterized community and separate property. Her objection was that one of his other exhibits was a judicial admission that his severance pay was community property. Citing *Roosevelt,* Mrs. Myers complained that any evidence contrary to the judicial admission was inadmissible. The appellate court disagreed because Mr. Myers had amended his inventory while Mrs. Roosevelt had not. *Id.* Husband amended his inventory here with leave of court.

Four days later, the Austin Court of Appeals issued its opinion in *Tschirhart v. Tschirhart*, 876 S.W.2d 507, 508 (Tex.App.--Austin 1994, no writ). Initially, the court addressed whether it could consider an inventory that, although filed with the district clerk, was never introduced into evidence. It compared the Tyler cases of *Poulter v. Poulter,* 565 S.W.2d 107, 110 (Tex.Civ.App.--Tyler 1978, no writ) and *Bokhoven v. Bokhoven,* 559 S.W.2d 142, 143-44 (Tex.Civ.App.--Tyler 1977, no writ) with *Vannerson v. Vannerson,* 857 S.W.2d 659, 670-71 (Tex.App.--Houston [1st Dist.] 1993, writ denied). The Tyler cases analogized inventories to written interrogatories and decided that an inventory could not be considered on appeal if it had

13

not been introduced into evidence at trial. On the other hand, *Vannerson* allowed an inventory to be considered as evidence because the trial court could have taken judicial notice of it. The *Tschirhart* court specifically declined to follow *Vannerson,* holding that while a court may take judicial notice of its own records, judicial notice is limited to matters that are generally known or are easily proven and cannot reasonably be disputed. Thus, a court could take judicial notice that a pleading had been filed but could not take judicial notice of the truth of the allegations. *Tschirhart*, 876 S.W.2d at 508. It then concluded that a court could not take judicial notice of the truth of statements in an inventory filed in a suit for divorce. *Id.* at 509. The court explained that because an inventory is not a petition or an answer and does not state a cause of action or defense, it is technically not a "pleading." *Id.* Then, citing *Roosevelt,* the court concluded that while the inventory could not be judicially noticed, it may constitute a judicial admission.

The Eastland court weighed in next in *Dutton v. Dutton*, 18 S.W.3d 849 (Tex.App.--Eastland 2000, pet denied), finding that Mr. Dutton's community characterization in his inventory constituted a judicial admission. During the marriage, Mrs. Dutton's parents conveyed 150 acres to "VICKY L. DUTTON and husband, JESS D. DUTTON." The Duttons built a house on the property and made other improvements. During the divorce proceedings, Mrs. Dutton introduced into evidence her inventory in which she characterized the land as her separate property. At trial she testified that her parents gave the property solely to her. Her parents did not testify. Mr. Dutton filed an inventory in which he listed the property as community property but he did not introduce the inventory into evidence. He testified that his in-laws had intended to make a gift to both of them, but took the position that the land was community property. The trial court characterized the property as community and awarded it to Mrs. Dutton. Mr. Dutton

14

appealed, claiming that since the conveyance was a gift to the couple jointly, he had a separate property interest. The appellate court determined that the warranty deed and release of lien did not indicate that the conveyance was a gift. On appeal, Mrs. Dutton argued that the inventory was a judicial admission. The appellate court expressly held that it could take judicial notice of the admission, "even if no one requested the trial court to do so and even if the trial court did not announce that it would do so." *Id.* at 856.

*Dutton* was evaluated in *Russell v. Russell*, No. 01-04-00984-CV, 2006 WL 241476 (Tex.App.--Houston [1st Dist.], Feb.2, 2006, no pet.) and applied inversely. In her inventory, Mrs. Russell characterized property as belonging to her husband's separate estate but this inventory was not introduced into evidence. The trial court characterized the property as community and Mr. Russell appealed. Citing *Dutton*, the court noted that not only had Mrs. Russell designated the property as her husband's separate property, she admitted it during her testimony and implicitly acquiesced to the characterization in her request for a just and right division of the estate. *Id.* *3.

We come now to *Taylor v. Taylor*, No. 2-05-435-CV, 2007 WL 2460359 (Tex.App.--Fort Worth, August 31, 2007, pet. denied). Here, the husband admitted that certain realty was his wife's separate property not only in his inventory but in a pre-trial hearing and in his response to interrogatories. "Most of his pretrial discovery requests were aimed at matters essential to his claim for reimbursement and economic contribution to the community estate for expenditures made on the Chimney Rock property." *Id.* *2. The trial court excluded from evidence a deed and other conflicting evidence because of the judicial admission and the court of appeals affirmed. *Id.*

In *Magness v*. Magness, 241 S.W.3d 910, 913 (Tex.App.--Dallas 2007, pet. denied), the wife challenged the trial court's characterization of certain real property as one-half her separate property and one-half her husband's separate property. While the wife owned the home prior to marriage, the issue was whether a 1993 deed evidenced a gift to her husband. Mrs. Magness appealed. The appellate court noted that the deed showed the wife as the grantor and her husband as the grantee and transferred a one-half interest in the home to him, creating the presumption of a gift. The wife testified she signed the deed as a condition of refinancing the home and she had no intent to make a gift. She also alleged that the husband judicially admitted that he had no separate interest in the home because he characterized it as community property in his inventory. Because she had not lodged this objection in the trial court, the court of appeals found she had waived the argument. The trial court's judgment was affirmed.

Finally, we turn to *Graves v. Tomlinson*, 329 S.W.3d 128 (Tex.App.--Houston [14th Dist.] 2010, pet. denied), where the parties disputed ownership of farm and ranch equipment. In her inventory, Graves characterized the property as belonging to the community estate. During trial, Tomlinson was questioned about the equipment he claimed as separate property. His inventory was admitted into evidence and it listed all of the equipment as community property. The jury characterized 40% of the equipment as Tomlinson's separate property and Graves appealed. The court of appeals held that the clear and convincing standard is not satisfied by testimony that items possessed at divorce are separate property when that testimony is contradicted or unsupported by documentary evidence tracing the asserted separate nature of the items. *Id.* at 140. Tomlinson's testimony was contradicted by his inventory and he offered no documents to support his characterization. The court concluded that no reasonable fact finder

16

could find that his unsupported testimony constituted clear and convincing evidence necessary to overcome the community property presumption and establish that 40 percent of the farm and ranch equipment was Tomlinson's separate property.

*Reality in the Trenches*

Family law practitioners know all too well that a divorce proceeding may remain pending for a considerable period of time. Assets may be bought or sold, stock values may go up or down, bank balances may expand and constrict. During discovery, a spouse may come to find that the monthly statements for a brokerage account statements are missing for periods of the marriage. That is not an insignificant issue. One may plead that the account is separate property, but income earned and dividends paid -- if not clearly traced -- will result in characterization of the account as community property due to commingling.[2] Such a discovery requires that an inventory be amended. Similarly, the value of a defined contribution retirement plan may be worth more on the day the divorce petition is filed than on the date of trial. In light of recent economic disruptions, homes are underwater, meaning that the fair market value is less than the mortgage balance. Pre-trial and trial amendments to inventories may -- and usually are -- required.

---

[2] We reject the argument that real estate, like cash, can be commingled. Proceeds from home equity loans thus need not be segregated between improvements for realty and improvements to a later-built home. As we have noted, the home itself is an improvement to the real property. Realty may be owned jointly by a spouse's separate estate and the community estate; it may even be owned by the husband's separate estate, the wife's separate estate and the community estate. Case law has clearly defined the formulas for apportioning ownership. Where one estate benefits another without a recognized *quid pro quo*, equitable claims for reimbursement may exist. *Penick v. Penick,* 783 S.W.2d 194, 198 (Tex. 1988). Indeed, the Texas Family Code authorizes claims for reimbursement in these exact circumstances. TEX.FAM.CODE ANN. § 3.402. But a claim for reimbursement does not affect the rule of inception of title under which the character of property is determined at the time the right to own or claim the property rises, nor does it create an ownership interest in the property. TEX.FAM.CODE ANN. § 3.404. We do recognize, however, that the proceeds from the sale of separate property may be so commingled as to defy tracing. *See Nelson v. Nelson*, 193 S.W.3d 624, 631 (Tex.App.--Eastland 2006, no pet.).

Factored into the conundrum is the reality that characterization is a complicated legal tenet. This case demonstrates how complicated it can be, particularly since the divorce was filed during the mayhem years of legislatively imposed economic contribution, a statute that has since been repealed. Litigants have knowledge of the facts. Lawyers have knowledge of the law. As attorneys conduct discovery, they learn whether evidence supports claims pled. "Fair notice" has always been the underpinning of Texas rules and procedures. Judicial admissions are utilized to prevent trial by ambush.

*Analysis*

So what conclusion do we draw from the case law? *Roosevelt* holds that an objection is required to exclude the introduction of contradictory evidence. *Myers* tells us that the *Roosevelt* issue is avoided when the inventory is amended. *Tschirhart* advises that an inventory may not be judicially noticed.

*Dutton* informs that not only may an inventory be judicially noticed, an appellate court may take judicial knowledge even if the trial court was not asked to do so. *Russell* is simple in the sense that the inventory and trial testimony were consistent; the trial court just got it wrong. *Taylor* is the poster child for lack of fair notice. Mr. Taylor admitted that realty was his wife's separate property not only in his inventory but in a pre-trial hearing and in his response to interrogatories. Discovery was aimed at reimbursement and economic contribution. This consistency led to exclusion of a deed when Mrs. Taylor's wife objected to its introduction. In *Magness*, the appellate court determined that the wife had waived the argument of a judicial admission when she failed to object in the trial court. Finally, *Graves* is less about the discrepancy between an inventory and trial testimony and more about the lack of clear and

18

convincing evidence when there is no documentation or corroboration of a witness's self-serving testimony of when or how property was acquired.

Taking all of these factors into consideration, we hold that there is no cognizable judicial admission when (1) a litigant pleads separate property; (2) a litigant tenders requests for admission related to a claim for separate property; (3) a litigant discloses during discovery the documentary evidence to support the claim of separate property; (4) the party opposite files responsive pleadings concerning economic contribution and equitable reimbursement demonstrating a recognition of a separate property claim; (5) the litigant seeks leave of court to amend an inventory to correct an error; (6) the trial court grants leave to amend an inventory; and (7) there is no objection to the admission of contradictory evidence.

## Quasi-Admission Through Testimony

In an alternative argument, Wife suggests that Husband is bound by certain testimony concerning his daughters. When asked on cross examination whether he wanted his wife and children to walk away with only a van, Husband responded, "I don't want my children to be without a house." When pressed for "a straight answer", Husband said, "I don't want to do bad thing to my daughter's [sic]. My daughters, they own the house." At best, this is the testimony of a father confronted by allegations that his daughters want no relationship with him to tell the court that he wants them to have a house. It is not a conclusion of legal title or ownership, particularly where the girls were minors.

## Has the Community Presumption Been Rebutted?

The trial court specifically found that Husband's inventory characterized the property as community and that "No other form of tracing or clear and convincing evidence to overcome the

community presumption was presented." We disagree. The evidence was not limited to Husband's testimony of the time and circumstances surrounding the purchase of the land. The deed of trust and release of lien were introduced into evidence without objection. That documentation establishes as a matter of law that the property was purchased before marriage and owned by Husband at the time of marriage. Because the trial court's findings to the contrary will not withstand a legal sufficiency challenge, Husband has proven his separate property claim by clear and convincing evidence and has demonstrated error. But not all error is reversible error.

## HARM ANALYSIS

Once upon a time, this court issued an opinion dealing with characterization of property and the three circumstances in which error can occur. In *Tate v. Tate*, we wrote:

### *Variations on a Mischaracterization Theme*

Three fact scenarios establish the appropriate structure of an appellant's characterization contention. First, suppose Wife claims Blackacre is her separate property and Husband claims the asset is community property. Second, suppose the trial court characterizes it as community property and awards it to Wife. On appeal, Wife must establish error; she must challenge that the characterization is against the great weight and preponderance of the evidence [a factual sufficiency complaint] or that separate property status was established as a matter of law [a legal sufficiency complaint]. She must also establish that the characterization error was harmful--because of the mischaracterization, the overall division of property constitutes an abuse of discretion. *In re Marriage of Morris,* 12 S.W.3d 877, 884 (Tex.App.--Texarkana 2000, no pet.h.)(mere mischaracterization of separate property as community property does not require reversal; it is appellant's burden to prove that any disparity in the division was caused by the mischaracterization of property and that it was of such substantial proportions that it constituted an abuse of the trial court's discretion); *Magill v. Magill,* 816 S.W.2d 530, 533 (Tex.App.--Houston [1st Dist.] 1991, writ denied)(accord).

Now suppose that given the same fact pattern, the trial court characterizes Blackacre as Wife's separate property and awards it to her. This time, Husband appeals. He must first establish error by challenging the legal or factual

20

sufficiency of the evidence to support the separate property characterization. He must also conduct a harm analysis--because of the mischaracterization, the overall division of property constitutes an abuse of discretion. *Vandiver v. Vandiver,* 4 S.W.3d 300, 302 (Tex.App.--Corpus Christi 1999, pet. filed)(mischaracterization of community property as separate property is not reversible unless the mischaracterization had more than a *de minimus* effect on the just and right division).

It is only in the third scenario that reversible error exists as a matter of law. In this example, Wife claims Blackacre is separate property and Husband claims it is community property. The trial court characterizes it as community property and awards it to *Husband.* If Wife can establish that Blackacre is her separate property, it is unnecessary to show harm because divestiture of separate property is reversible error. *Eggemeyer v. Eggemeyer,* 554 S.W.2d 137, 140 (Tex. 1977); *In re Marriage of Morris,* 12 S.W.3d at 881. In this singular instance, there is no need to demonstrate that the overall property division constitutes an abuse of discretion.

*Tate,* 55 S.W.3d 1, 6-7 (Tex.App.--El Paso 2000, pet. denied). This case is the classic third scenario because Husband has established his separate property as a matter of law and he has been divested of it contrary to the Texas Family Code and the Texas Constitution. We conclude that the promissory note, deed, and release of lien establish as a matter of law that the property belongs to Husband's separate estate. Because he has been fully divested of his interest therein, reversible error has been demonstrated. We sustain all four issues for review and reverse and remand accordingly.

January, 15, 2014

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rivera, and Rodriguez, JJ.