# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-14-00435-CV

**Leslie Otis Rolls, Jr., Appellant**

**v.**

**Susan D. Rolls, Appellee**

### FROM THE DISTRICT COURT OF COKE COUNTY, 51ST JUDICIAL DISTRICT
NO. CV12-004436, HONORABLE BARBARA L. WALTHER, JUDGE PRESIDING

## CONCURRING AND DISSENTING OPINION

I join in the Court's disposition of Otis's second issue, regarding attorney's fees, but am compelled, respectfully, to part ways as to the first issue, concerning characterization of Otis's Midland Life policy.

I have no quarrel with the substantive legal propositions on which the Court's characterization analysis rests—from cases such as *Barnett*,[1] it would appear that characterization of a divorcing spouse's life-insurance policy would be governed by the "inception-of-title" rule, meaning that a policy originating prior to marriage would remain entirely that spouse's separate property, although the community estate would be entitled to reimbursement for any premiums that

---

[1] *Barnett v. Barnett*, 67 S.W.3d 107, 111 (Tex. 2001).

were paid with community funds.[2] My differences stem chiefly from matters of procedure—namely, Otis made no claim of this sort until after trial and judgment, when new counsel raised it on his behalf in a motion for new trial. Until then, Otis advanced a markedly different claim, seeking as his separate property only a proportionate share of the policy's surrender value representing the portion he attributed to premium payments or income prior to marriage, which he determined to be $9,401. He correspondingly acknowledged that the remaining portion of the policy's value, $7,381, would be community property, as it represented premiums or income paid or accruing during the marriage. He steadfastly and repeatedly asserted this position through two sets of sworn

---

[2] *See ante*, at 2–3 (citing *Barnett*, 67 S.W.3d at 111; *Camp v. Camp*, 972 S.W.2d 906, 909 (Tex. App.—Corpus Christi 1998, pet. denied); *Wohlenberg v. Wohlenberg*, 485 S.W.2d 342, 348 (Tex. Civ. App.—El Paso 1972, no writ); *McCurdy v. McCurdy*, 372 S.W.2d 381, 383–84 (Tex. Civ. App.—Waco 1963, writ ref'd)). I also agree with the Court's tacit rejection of Susan's argument that the inception-of-title rule is inapposite because, she insists, the decree awarded her a portion of the policy's cash surrender value rather than "the actual Midland Life Insurance Policy" itself. The structure and phrasing of the decree reflects that the district court's award of "One-half of the Cash Surrender Value from the Midland Life policy . . . as of November 13, 2003 [the date of trial], said amount not to be less than $8,390.93," is founded on the characterization of the policy as a community asset.

inventories that were filed with the district court, his trial testimony, and the closing arguments of his trial counsel.[3]

_____

[3] More specifically:

- Otis filed an initial sworn inventory in which he listed assets that included the Midland Life policy. He claimed that the policy's value was $16,782, of which $9,401 was his separate property and the remaining $7,381 was community property.

- On the eve of trial, Otis filed a more detailed sworn inventory in which he asserted the same claims regarding the Midland Life policy—cash surrender value of $16,782, of which $9,401 was separate property and $7,381 was community property. Susan also filed a sworn inventory, in which she asserted the policy's entire value was community property.

- Although none of the inventories were themselves introduced into evidence at trial, the parties, their counsel, and the district court continually referenced them during testimony. Trial testimony focused primarily on other assets, but both parties briefly addressed the Midland Life policy. Referencing his most recent sworn inventory, Otis attested to the valuation and characterization of the policy indicated there, further explaining that $9,401 of the cash surrender value had been contributed before marriage, $7,381 during marriage. His sole explicit disavowal of his inventories was to correct a comment contained in his most recent version indicating that he had owned the policy since 1969; he testified that the correct year was 1989. (An annual report concerning the policy, introduced by both parties, reflected issuance in December 1988 and also that the cash surrender value as of December 17, 2011, was $16,781.86).

- During closing arguments, Otis's counsel reiterated his position that "[p]art of [the Midland Life policy is] separate, part of it's community," and that while "the nine thousand four hundred and one is . . . our separate property," the $7,381 "is something to be divided by the community." Responding to Otis's theory of recovery, Susan's counsel urged that Otis had failed to rebut the community-property presumption as to any portion of the asset because he had presented no evidence of what the policy's cash surrender value had been before the date of marriage.

- After the district court signed its decree characterizing the policy as entirely a community asset and awarding Susan one-half of its cash surrender value as of the date of trial, Otis, through new counsel, filed a motion for new trial asserting, for the first time, that the entirety of the policy was his separate property per an inception-of-title theory. To this Susan responded in part that Otis had judicially admitted that any value in excess of $9,401 belonged to the community estate, thereby preserving that contention.

I would hold, as have sister courts in similar circumstances, that Otis's statements in his sworn inventories (if not others he made) had the effect of judicial admissions that barred him from claiming any separate-property share of the Midland Life policy's cash surrender value in excess of $9,401.[4] A judicial admission "establishes the issue in dispute as a matter of law on behalf of the adversary of the one making such admission"[5] and bars the admitting party from contesting its truth.[6] The judicial-admissions doctrine rests upon jurisprudential policies that include

---

[4] *See Dutton v. Dutton*, 18 S.W.3d 849, 853–54, 856 (Tex. App.—Eastland 2000, pet. denied) (where husband characterized property as community in sworn inventory filed with court, "did not attempt to contend at trial that the property was anything but community property, and he did not withdraw the statement made in his inventory," husband was bound to statement as judicial admission); *Roosevelt v. Roosevelt*, 699 S.W.2d 372, 374 (Tex. App.—El Paso 1985, writ dism'd) (wife's sworn inventory characterizing jewelry as partly separate property, partly community was judicial admission of the community status of the latter); *see also Russell v. Russell*, No. 01-04-00984-CV, 2006 Tex. App. LEXIS 869, at *8–9 (Tex. App.—Houston [1st Dist.] Feb. 2, 2006, no pet.) (mem. op.) (wife's sworn inventory characterizing assets as husband's separate property was judicial admission where designation was clear and unequivocal, the parties and the court relied on the inventory at trial, and "at no time did [wife] challenge the accuracy of the inventory"). *Cf. Rivera v. Hernandez*, 441 S.W.3d 413, 416–18, 420–24 (Tex. App.—El Paso 2014, pet. denied) (husband's sworn inventory characterizing real estate as community asset did not bind him as judicial admission where parties' pleadings and discovery were consistent with his assertion of separate-property claim instead, husband sought and was granted leave to amend his inventory to correct the "mistake," and evidence establishing separate-property status was admitted without objection).

[5] *Tschirhart v. Tschirhart*, 876 S.W.2d 507, 509 n.1 (Tex. App.—Austin 1994, no writ) (citing *Roosevelt*, 699 S.W.2d at 374).

[6] *Dutton*, 18 S.W.3d at 853 (stating the concept in terms of "estop[ping] the party who made [the judicial admissions] from challenging their truth"). Consequently, the significance of Otis's sworn inventories is not that they are *evidence* of the policy's proper characterization—it is that they would serve to resolve the issue through binding admission in *lieu of* evidence. Accordingly, it matters not that Otis's inventories were not formally introduced into evidence but only filed with the district court. *Tschirhart*, 876 S.W.2d at 509 & n.1 (holding that "unless a party's inventory is formally admitted into evidence at trial, that party may not rely on the inventory as evidence on appeal," but recognizing that sworn inventory filed with the court could nonetheless constitute a judicial admission).

4

preventing "trial by ambush" (or in this case, ambush through post-judgment practice and appeal).[7]

That concern is acutely implicated here.

While denying Susan recovery because she failed to assert a reimbursement claim for the premium payments that were made with community funds,[8] the Court overlooks that such a claim would have been logically inconsistent with the theory on which Otis relied throughout trial in attempting to establish his separate-property interest in the policy (proportionate interests as opposed to his current theory of sole separate property subject to right of reimbursement).[9] Similarly, a claim

---

The case law distinguishes between "formal" judicial admissions, which can include assertions of fact in live pleadings, *see Houston First Am. Sav. v. Musick*, 650 S.W.2d 764, 767 (Tex. 1983), and those made in other contexts, such as trial testimony, although proof of the latter may be somewhat more demanding than the former. *See, e.g.*, *Dutton*, 18 S.W.3d at 853 ("Five conditions must occur before a party's admission is conclusive against him: (1) the declaration relied upon must have been made in the course of a judicial proceeding; (2) the declaration was contrary to an essential fact embraced in the theory of recovery or defense asserted by the party; (3) the statement was deliberate, clear, and unequivocal; (4) giving conclusive effect to the declaration would not run contrary to public policy; and (5) the declaration related to a fact upon which a judgment for the opposing party was based." (citing *Griffin v. Superior Ins. Co.*, 338 S.W.2d 415, 419 (Tex. 1960); *United States Fid. & Guar. Co. v. Carr*, 242 S.W.2d 224, 229 (Tex. Civ. App.—San Antonio 1951, writ ref'd)); *cf. In re A.E.A.*, 406 S.W.3d 404, 411 n.3 (Tex. App.—Fort Worth 2013, no pet.) (maintaining that "*Carr's* five-factor analysis is expressly not applicable to judicial admissions allegedly made in pleadings"). This Court has previously analogized sworn inventories on file to pleadings. *See Tschirhart*, 876 S.W.2d at 509. There is no need to decide which analysis governs here because Otis's assertions in his two sworn inventories would qualify as judicial admissions under either standard.

[7] *Rivera*, 441 S.W.3d at 424; *see also Roosevelt*, 699 S.W.2d at 374 ("the rule by which a party's recovery in a [lawsuit] is barred by his own testimonial declarations is one of public policy and that it would be absurd and manifestly unjust to allow a party to recover contrary to his clear and unequivocal sworn assertions" (citing *Carr*, 242 S.W.2d at 229–30)).

[8] *See ante*, at 4–5.

[9] Remember that it was Otis, not Susan, who had the burden to establish any separate-property interest on his part. *See* Tex. Fam. Code § 3.003; *Pearson v. Fillingim*, 332 S.W.3d 361, 363 (Tex. 2011) (per curiam) (citing *McKinley v. McKinley*, 496 S.W.2d 540, 543 (Tex. 1973)).

for reimbursement of premiums paid by the community would have been largely redundant of the community interest that Otis had already conceded at that juncture, a community interest tied to the amount of premium payments made during marriage. Asserting a reimbursement claim, moreover, would have potentially invited Otis to retreat from his concession of the community's interest. If Susan must be bound so rigorously to the claims and theories she did or did not assert below, as the Court holds, then it would seem we should treat Otis the same way. The judicial-admissions doctrine would have us do so.

The Court insists that the judicial-admissions doctrine has no application here. It invokes the concept that judicial admissions must concern facts, not conclusions of law, and reasons that Otis's assertions recognizing a community interest in the Midland Life policy are only the latter.[10] But whether a particular asset is owned by husband, wife, or the community, though necessarily turning on some application of legal principles, has long been considered of a sufficiently factual nature to be susceptible to judicial admission.[11] That is the longstanding view of this Court, in fact.[12]

The substance of the Court's concern here may instead implicate whether Susan waived her right to rely on the binding effect of Otis's judicial admissions by failing to object to the admission of evidence (proof that the policy was issued in 1988 or 1989, which preceded the parties' marriage in 2002) that would have the legal effect of establishing the policy to be Otis's sole separate

---

[10] *See ante*, at 3–4.

[11] *E.g.*, *supra* n. 4.

[12] *See Tschirhart*, 876 S.W.2d at 509 n.1 (recognizing that "inventories may constitute judicial admissions" (citing *Roosevelt*, 699 S.W.2d at 374)).

6

property by virtue of the inception-of-title rule.[13]  But while this evidence was indeed admitted at trial without objection, these events did not, under the circumstances of this case, amount to a waiver of Susan's rights to rely upon Otis's admissions of a community share in the policy.  This was so because Otis's admissions became relevant as such only after trial had concluded, indeed only after judgment, when Otis first asserted his current claim of sole separate property through his motion for new trial.  Throughout trial, Otis's theory of recovery remained the same one he had memorialized in his sworn inventories—a claim to a separate-property interest only in the portion of the policy's surrender value that had accrued prior to marriage.  At that juncture, Susan had no notice that Otis would attempt to rely on the aforementioned evidence to prove facts contrary to his prior admissions of a community interest in the policy.  Her actions at trial thus did not represent a knowing relinquishment of her right to invoke those admissions as a bar to the contrasting theory Otis began advancing only thereafter.[14]

In light of Otis's judicial admissions, I would, in contrast to the Court, reverse and render judgment that only $9,401 of the cash surrender value of his Midland Life policy is his separate property.  This holding would further require us to remand the case for reconsideration of

---

[13]  *See, e.g.*, *Musick*, 650 S.W.2d at 769 ("The party relying on his opponent's . . . judicial admissions of fact . . . must protect his record by objecting to the introduction of evidence contrary to that admission of fact and by objecting to the submission of any issue bearing on the fact admitted.").

[14]  *See Dutton*, 18 S.W.3d at 855–56 (where husband's theory at trial conceded community ownership of real property, then argued on appeal that evidence proved it was his sole separate property instead, wife did not waive reliance on husband's prior admissions of community status in sworn inventory by failing to object to evidence at trial); *see also Jernigan v. Langley*, 111 S.W.3d 153, 156 (Tex. 2003) ("Waiver is defined as 'an intentional relinquishment of a known right or intentional conduct inconsistent with that right.'" (quoting *Sun Expl. & Prod. Co. v. Benton*, 728 S.W.2d 35, 37 (Tex. 1987))).

the division of community property.[15]  I agree, however, that we must reverse and render a take-nothing judgment as to Susan's claim for attorney's fees.

_____

Bob Pemberton, Justice

Before Justices Puryear, Pemberton, and Bourland

Filed:   January 14, 2016

---

[15] *See Jacobs v. Jacobs*, 687 S.W.2d 731, 732 (Tex. 1985); *Geisler v. Geisler*, No. 03-08-00734-CV, 2010 WL 2330362, at *4 (Tex. App.—Austin June 10, 2010, no pet.) (mem. op.).